HARRY RUBENSTEIN, PROSECUTOR, v. BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, AND THE CITY OF BAYONNE, A MUNICIPAL CORPORATION, DEFENDANTS.

ROBERT HANLON, PROSECUTOR, v. BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, AND THE CITY OF BAYONNE, A MUNICIPAL CORPORATION, DEFENDANTS.

HARRY HAUSHEER, PROSECUTOR, v. BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, AND THE CITY OF BAYONNE, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued May 3, 1938—Decided September 8, 1938.

Before Justices CASE, DONGES and PORTER.

For the prosecutors, *Spaulding Frazer*.

For the defendants, *Alfred Brenner*.

The opinion of the court was delivered by

CASE, J. The three prosecutors were appointed on January 3d, 1938, to their several positions in the police and fire departments of the city of Bayonne by Horace K. Roberson, commissioner of the department of public safety; Rubenstein, a newly appointed patrolman on the police force; Hanlon, a newly appointed fireman in the fire department; and Hausheer, previously a fireman, promoted to the position of chauffeur in the fire department. At the same time and under the same circumstances the commissioner made other new appointments of eight patrolmen in the police department and of eight firemen in the fire department and promotions of seven existing members of the police department and of five existing members of the fire department. Less than two weeks thereafter Roberson was transferred to the commissionership of the department of public affairs. Counsel consider that the fate of all thirty appointees follows that of the three prosecutors. Perhaps so; but what, and all that, we are called upon to do is to decide the issues on the three writs of *certiorari* out-

standing under the above titles, which have been consolidated in the state of case and covered by one set of briefs.

The city of Bayonne is under the commission form of government. On May 21st, 1935, more than two and one-half years before the prosecutors were appointed, the present board of commissioners organized and lodged "all of the executive, administrative, judicial and legislative powers, duties and authority" relating to the police department and the fire department in the department of safety, vested the director of that department with all the "powers, authority, rights and duties vested in or given by any statute, charter or ordinance relating to" the police department and the fire department and ordered that the said director "shall perform all the duties imposed by law with respect thereto." There were ordinances for the establishment, maintenance, regulation and control of the police department and of the fire department. The appointments of the prosecutors and of all the other appointees were strictly within the provisions, numerically and in every other respect, of the ordinances. Those ordinances were not, and have not been, amended to bear upon the pending questions. Each of the persons involved possessed the qualifications of the position to which he was named, took and subscribed to the oath of office, entered upon the performance of his official duties and continued in service until the passage of the resolutions next to be mentioned. No charges have been brought against them and no hearing preliminary to the passage of the ordinances of dismissal was accorded. It does not appear when the vacancies, or any of them, filled by Director Roberson occurred. It does not appear that the vacancies had existed for any considerable period of time or why, if they had so existed, they were left unfilled. No policy of municipal government, either unanimous or disputed, antedating the appointments, is shown. Suggestions of planned economy are presented in defendants' brief, but they are without support in either the proofs or the stipulated facts.

The writs bring up for review two resolutions passed by the Board of Commissioners on January 15th, 1938, one directed

at the appointments and promotions in the police department and the other at the appointments and promotions in the fire department. The resolutions denounce the appointments and promotions as "unlawful, illegal, invalid and void," although they name no grounds for the denouncement and specify no particulars of imperfection. In terms they rescind and vacate the several appointments and promotions, dismiss the new appointees and demote to their original positions those who had been promoted.

It is said by the prosecutors, rightly, as we believe, that the Board of Commissioners had no authority under the circumstances to dismiss the prosecutors and that it was not for the board, as a court, to pass judgment in that fashion. It is settled that after the various powers of government in commission controlled cities have been distributed among the several departments and the appointments of directors have been made the executive and administrative powers are to be exercised by the respective commissioners presiding over the several departments and not by the whole body of commissioners. *Sykes* v. *Heinzman,* 100 *N. J. L.* 12; *Seaman* v. *Strollo,* 105 *Id.* 570; *Bogle* v. *Woods,* 10 *N. J. Mis. R.* 858. The power to dismiss lay with the director and not with the board. *Foley* v. *Orange,* 91 *N. J. L.* 554. The circumstances under which this court in *Spears* v. *Commissioners of North Bergen,* 10 *N. J. Mis. R.* 962, sustained the action of a board of commissioners in abolishing certain positions by ordinance and thereupon declaring, by resolution, appointments to those positions theretofore made by the director to be void and the procedure there followed are quite different from those of the instant case, as examination and comparison will divulge. *O'Connell* v. *Bayonne,* 116 *N. J. L.* 61, cited by defendants, is not, we think, pertinent.

Indeed, defendants do not seriously argue that the Board had authority to do or to undo. The contention appears to be that funds appropriated to the police and fire departments were not adequate to pay the wages thus added by the director to the payroll; that the director was therefore powerless to make the appointments; that the appointments were conse-

quently void and that the resolutions were merely the mode pursued by the Board to give that information to the public. The exact language of the brief is:

"If they [viz., appointments in the absence of an adequate appropriation] could not be, then even though appointments and promotions were attempted, the same never became effective and the inevitable conclusion follows that governing body would have the authority to ignore them completely. Instead of following this course, the Board of Commissioners by public pronouncement informed the prosecutors and the public generally, that the appointments and promotions would not be recognized and in pursuance thereof adopted the resolutions declaring the same invalid."

But that is not what the board did. What it did was to go through the motions of vacating appointments and dismissing or, as the case was, demoting the appointees. The Board lacked jurisdiction. Consequently the resolutions were futile. They had no effect upon the *status* of prosecutors.

This finding, unfortunately, leaves the legality of the appointment of the prosecutors undecided. A decision of that point, with the record in its present shape, would hinge upon the law question whether a man may be appointed to the police force or to the fire department, or, being a member, may be promoted in the service, in the absence of an appropriation to cover the additional costs to the city thereby incurred and upon the fact question whether there was such an appropriation in the instant cause. A related law question is whether a board of commissioners, having provided by ordinance that the police and fire forces shall consist of a specified number of men at designated wages, is under a duty to make appropriations adequate to meet the payroll of the persons appointed in compliance therewith and whether the officer upon whom rests the duty of making the appointments in the two departments may reasonably assume that the board will make such an appropriation. *Herman* v. *Guttenberg*, 86 *N. J. L.* 681, is not dispositive; it was decided, apparently, on a state of facts wherein there was money in hand to pay the members of the police department for the calendar year of the appointment.

Essential facts are not before us. We consider that the circumstances attendant upon the vacancies and the appointments should be shown. When did the vacancies occur? Were they of long standing? Was this an attempt by an official soon to go out to make wholesale appointments to long standing vacancies? Were the appointments routine? For added instance, the appropriations. The 1937 appropriation for fire department salaries was $516,000. $6,218.26 of that amount was not actually used for fire salaries. That sum was ample to take care of the salary costs of Hanlon and Hausheer. Were their positions, that is, the positions to which they were appointed on January 3d, 1938, occupied by others until late in 1937 and then vacated? For which, if either, of the litigated positions did this sum make provision? The appropriation for 1938, if all of the thirty new appointees were to be provided for, would need to be $530,000. The requirement for salaries without the addition of any of those appointees would be $502,697.84. The appropriation was actually $510,200, made after the prosecutors were appointed. For whom was the excess of the last mentioned figure over the one immediately preceding it intended? We have only two firemen and only one policeman with whom we are concerned. If we correctly understand the provisions of the fire ordinance, the pay of a first year fireman is $2,100, advancing up to $2,500 for the fourth year of service and thereafter. Hanlon's wage would therefore amount to $2,100, and the additional money required by the promotion of Hausheer, if we may assume that he had been a fireman for three years or more, would be $200; $2,700, well within the increase in the 1938 appropriation over that of 1937. So far as the figures show the pay of these two prosecutors might have been included in the appropriation; but was it? Thus it is that we are asked to decide a novel and a very important question of municipal law without the proofs which we deem necessary to a satisfactory answer. Further, it seems that what the parties desire is a determination of the status of thirty men, not merely of the three prosecutors; and it is not certain that a decision in the selected cases would be capable of so wide extension.

The resolutions under review will be set aside without prejudice to such further procedure to determine the validity of the appointments as either the prosecutors or the defendants may be advised to pursue. Costs are not allowed.