FRANK J. ALBERT, Jr., ET AL., PROSECUTORS-RESPOND-ENTS, v. MAURICE H. CALDWELL, DIRECTOR, ETC., DEFENDANT-APPELLANT

JAMES CARONIA, PROSECUTOR-RESPONDENT, v. MAURICE H. CALDWELL, DIRECTOR, ETC., DEFENDANT-APPEL-LANT.

Submitted May 26th, 1939—Decided October 16, 1939.

For the appellant, *Edmond J. Dwyer* and *Joseph F. Zeller.*

For the respondent Caronia, *James A. Palmieri* and *Frank A. Palmieri.*

For the respondents Albert et al., *Lord & Lord.*

The opinion of the court was delivered by

DONGES, J.  On September 26th, 1938, the director of public safety of the city of Orange issued an order, known as Order No. 35, the pertinent part of which is as follows: "Effective October 1st, 1938, the services of members of the Chance Force, or Chancemen, will be dispensed with." Twenty chancemen were affected by the order. A *certiorari* to review the order was granted and Mr. Justice Parker set it aside. This appeal is from this action.

There were two writs issued, one at the instance of prosecutor James Caronia, and the other at the instance of prosecutor Frank J. Albert, Jr., and others. No objection is made to the joinder of the prosecutors, although there seems to be no authority for such joinder. See rules 169, 171 of the Supreme Court. *Bakely* v. *Nowrey*, 68 *N. J. L.* 732. We proceed to the merits.

The prosecutors-respondents admittedly were all members of the chance force of the Orange police department.

Two points are argued by appellant. (1) That prosecutors-respondents are, as a matter of law, not protected by tenure of office, but, on the contrary, are subject to removal without cause and without a hearing; and (2) that the voters of Orange by referendum, on November 2d, 1937, adopted the Civil Service act, and, therefore, the director of public safety was precluded from continuing in office temporary employes, including the members of the chance force.

In the appellant's brief it is said: "It is admitted on behalf of defendant-appellant that the prosecutors-appellees are members of the city of Orange police department, but that a distinction must be made between 'regular' members of the police department and 'temporary' members of the police department, as it is respectfully urged that the prosecutors-appellees were but 'temporary' members * * *."

Appellant's case is based upon the claim that these chancemen were temporary employes. The record discloses that one of them has been employed in that capacity since June 12th, 1919, and the others for varying terms of service.

The ordinance presently controlling the department, adopted December 12th, 1922, provides: "The officers of the Police department are hereby constituted and shall be known as follows: a. One Chief. b. One Captain. c. Such number of Lieutenants as may be deemed necessary. d. Such number of Sergeants as may be deemed necessary. e. Such number of Patrolmen as may be deemed necessary. f. Such number of Chancemen as may be deemed necessary." The provision for chancemen appears in the rules and ordinances of the department since 1891 and in an ordinance concerning the police department adopted in 1917.

It appears from all of the municipal action that the position of chanceman is created in the same language as the other positions and is a regular position in the department to the same extent as the other positions. It further appears that chancemen have been recognized to such extent as permanent members of the force, that as early as 1914 (*Exhibit E*), it was provided that candidates for the position of patrolman must serve one year as chanceman. Section 3 of the present ordinance provides for the payment of members of the force, except chancemen, in semi-monthly installments, and for the payment of chancemen at a day rate to be fixed, for each day of actual service.

On November 2d, 1937, the municipality, by popular vote, adopted the Civil Service act. But, tenure of office in the police department is established by the "Home Rule act" (*Pamph. L.* 1917, *pp.* 359, 360; *R. S.* 40:47-5, 6), and the positions of permanent members of the police department would not be affected by such adoption of civil service.

. We conclude that, in the instant case, the chancemen are not temporary employes, but are regular members of the department appointed for part time service. They serve such days as they are required, and get paid only when they work, but they are regular members of the department entitled to tenure and to keep their positions unless discharged after hearing on charges, to the same extent as the chief or any other member. In *Bakely* v. *Nowrey,* 68 *N. J. L.* 95; *affirmed,* 68 *Id.* 732, where the ordinance of the city of Camden provided that the police department should "consist of a chief of police, * * * seventy-eight policemen and two substitutes or chance policemen," the Supreme Court said: "There appears no room for controversy over the construction of this ordinance or the relation of chance policemen to the department; they are police officers. A chanceman on the force of the city of Camden is a police officer within the act of March 25th, 1885, and its supplements, and is protected from removal except for cause and in the manner pointed out in that statute." This court approved this language.

The judgment of the Supreme Court is affirmed.

*For affirmance*—The Chief Justice, Case, Bodine, Donges, Porter, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ.   11.

*For reversal*—The Chancellor, Heher, Perskie, JJ.   3.