[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 601 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 602 
The plaintiff-relator began this action by filing an information in the nature of a writ of quo warranto. The information challenges the right of the defendant-respondent, Harold J. Jones, to hold office as a patrolman in the police department of the Village of Ridgefield Park, Bergen County, New Jersey. The relator is a corporation of the State of New Jersey, and a taxpayer of the Village of Ridgefield Park.
The information avers that the respondent unlawfully holds the office of patrolman in the police department of the Village of Ridgefield Park, because, according to the allegations of the information, the respondent was appointed patrolman on March 28, 1947, and he was then 33 years of age and not a war veteran. The relator relies upon chapter 219 of the laws of 1945 (N.J.S.A. 40:47-4), which prohibits the appointment of any person to the police force of a municipality, who is more than 30 years of age, except a war veteran. The respondent was born February 22, 1914; hence, he was 33 years of age in March, 1947, and, it is agreed, that he is not a war veteran. *Page 603 
The respondent claims that he was duly and legally appointed a patrolman in the Ridgefield Park Police Department between June 5th, and June 8th; and that said appointment was to take effect June 16, 1944. At that time the statute provided that no person should be appointed a member of the police force of any municipality who was more than 35 years of age (P.L. 1939, c.
318). Since in June, 1944, the respondent was only 30 years of age, he was then eligible for appointment as a police patrolman.
The Village of Ridgefield Park is governed by the provisions of the Walsh Act, chapter 221 of the laws of 1911 (R.S. 40:70-1et seq.). In June, 1944, Herbert I. Lowe was the Mayor of the Village of Ridgefield Park and the Director of the Department of Public Safety. In March and April, 1947, the said Herbert I. Lowe was a member of the Board of Commissioners and the Director of the Department of Public Safety. The police department is in the Department of Public Safety, and Herbert I. Lowe was its director in June, 1944, and, also, in March and April, 1947. As the Director of the Department of Public Safety and of the Police Department, Herbert I. Lowe had full authority to make all appointments to the police force (Rubenstein v. Bayonne,121 N.J.L. 97; Hayes v. Atlantic City, 8 N.J. Misc. 607).
The Village of Ridgefield Park has not adopted the Civil Service Act of New Jersey (R.S. 11:19-1 et seq.).
On March 14, 1939, the Village of Ridgefield Park adopted an ordinance establishing and regulating a police department. The ordinance provides that the "Police Department" shall contain "such number of patrolmen as the Director may deem necessary," and that all appointments to the police department "shall be made by the Director."
In the minutes of the meeting of the Ridgefield Park Board of Commissioners held on April 8, 1947, appears the following excerpt under "Communications:"
"From Mayor Lowe advising of the appointment of Harold J. Jones as a permanent member of the Ridgefield Park Police Department with rank of patrolman, such appointment to be retroactive to June 16, 1944, the date he originally joined the Department. Communication ordered filed for record." *Page 604 
The relator insists that respondent's appointment as patrolman in the Ridgefield Park Police Department can only stem from the appointment referred to in the aforementioned minutes of April 8, 1947, and that said appointment cannot be retroactive or relate back to any appointment made prior to March 28, 1947. If the relator is correct in its contention, then the respondent's appointment was illegal, and void, because he did not then possess the statutory qualification as to age. The respondent was then, March or April, 1947, 33 years of age, and the statute then provided that no person more than 30 years of age could be appointed to the police department of any municipality. Thisstatutory requirement could not be circumvented and defeated merely by the Director of Public Safety making the appointment retroactive to some date prior to the enactment of the statute. Consequently, if respondent's appointment is legally good and valid, it must have been made and become effective prior to the adoption of chapter 219 of the laws of 1945, which statute prohibits the appointment of any person more than 30 years of age, other than a veteran, to the police force of a municipality.
At the hearing in this matter, Herbert I. Lowe, the Director of Public Safety and of the Police Department, appeared as a witness and testified that sometime between June 5, and June 8, 1944, he appointed the respondent a patrolman in the Ridgefield Park police department, effective June 16, 1944. This appointment was made orally at the Ridgefield Park municipal building in the presence of the chief of police, Joseph E. Gorman. The chief of police also testified that between June 5, and June 8, 1944, Director Lowe appointed the respondent a patrolman in the Ridgefield Park police department. The respondent likewise testified that he was appointed a patrolman in the police department between June 5, and June 8, 1944, by Mayor Lowe. There is no testimony, or other evidence, that this oral appointment did not actually take place as related by these three witnesses. Their testimony must be accepted as true.
On the afternoon of June 16, 1944, the respondent reported to the chief of police at the police department in the municipal *Page 605 
building, and received from the chief his, respondent's, police equipment, which included his police badge and hat piece, signifying that he was a member of the Ridgefield Park Police Force. The respondent then took his oath of office, as required by law (R.S. 40:46-19, 41:1-1), before the village clerk, Elwood G. Hoyt, to "perform all the duties of the office of patrolman of the Village of Ridgefield Park."
In addition to the statutory requirement concerning the oath of office, the village ordinance establishing the police department provides that every member thereof shall, before entering upon the performance of his duties, take and subscribe to an oath of office, which oath shall be filed with the village clerk. This was done on the afternoon of June 16, 1944, as above stated.
After the oath of office was administered, the chief of police told respondent to report for duty at 6:50 o'clock that evening. Pursuant to instructions, at 6:50 P.M., on June 16, 1944, the respondent reported at police headquarters for duty. He was dressed in the regular uniform of a Ridgefield Park policeman, and wore a policeman's badge and full equipment. The chief of police detailed him to patrol, on foot, the Main Street business district of Ridgefield Park, and respondent immediately proceeded to carry out this police assignment. At 8 o'clock that same evening, Sergeant Booth of the Ridgefield Park police force ordered the respondent, who was then performing his assigned duty as a policeman, to report at the mayor's office in the municipal building. In response to that order, respondent went to the office of the village clerk, which was next to the mayor's office. In the presence of the chief of police, the said clerk showed the respondent a written communication addressed to the respondent, dated June 16, 1944, and signed by Herbert I. Lowe, Director of the Department of Public Safety. This communication reads as follows:
"To: Harold J. Jones
"You are hereby appointed as a special policeman, as prescribed by Revised Statutes of New Jersey, 40:47-19.
"Your duties shall include such police duties as may be directed and prescribed by the Chief of Police of the Village of Ridgefield Park. *Page 606 
"It is an express condition of your employment that you are not, or by virtue of your employment are you to become, a member of the Police Department of the Village of Ridgefield Park, and you have and will have no rights, claims or interest therein or to any of the benefits, pensions or other rights to which members of the Police Department are entitled under an ordinance of the Village entitled `An Ordinance to Re-organize, Establish, Maintain, Regulate and Control a Police Department in the Village of Ridgefield Park and to provide Rules and Regulations for the Government and Control Thereof' adopted March 14, 1939, or the laws of the State of New Jersey.
"You are to receive compensation at the rate of $150.00 per month, payable semi-monthly.
"Your services may be terminated by the Director of the Department of Public Safety and Finance at any time, without notice and without cause or hearing.
"Dated June 16th, 1944.
"s/ H.I. Lowe
 "Director of the Department of "Public Safety and Finance"
The clerk requested respondent to sign the following statement, which was typed below the above communication on the same sheet of paper:
"I hereby accept the foregoing employment, subject to the terms and conditions as set forth above, which I have read and understand."
Respondent objected to signing the paper because it purported to appoint him as a "special policeman," saying that he was appointed a regular policeman. The clerk told him that it was "just a form" which had been used before. The respondent then signed the said endorsement, and returned to his duty of patroling his assigned post.
At the hearing in this matter, Commissioner Lowe testified that he wanted to force respondent to serve an indefinite probationary period, to wit, until "the date the soldiers came back and we had an examination," and that the aforesaid communication was the mayor's own stratagem for making this particular appointment to abide his official pleasure. He testified as follows:
"I wanted some form of letter to indicate that Mr. Jones would be on probation, and that in the event that he failed to comply with *Page 607 
the terms of the probation, I would have something to prevent him, or had hoped it would prevent him, from continuing if he failed to live up to the terms of the probation. * * *
"THE COURT: Suppose he had insisted on remaining on the force, what would you have done if you wanted to get rid of him?
"THE MAYOR: I don't suppose I could have done anything.
"THE COURT: Then, insofar as you are concerned, this letter you didn't intend to have any effect?
"THE WITNESS: Only as an agreement between him and myself. If he failed to live up to it, I would have that to show him, `You didn't make the grade.' * * *"
"Q. What was the length of the probation, what term, six months, or a year? A. The period lasting from the date of the employment and the date the soldiers came back and we had an examination, and give them a chance —
"Q. So there is no doubt the employment was indefinite as to length of time? A. Yes. * * *"
Neither the statute nor the village ordinance provides for a probationary period for appointees to the Ridgefield Park police department. Under the express terms of the police ordinance, a member of the police department holds the office to which he has been appointed "during good behavior, physical and mental capacity, efficiency and residence in the Village of Ridgefield Park." The ordinance explicitly prohibits the removal of a member of the police department at any time after his appointment for any reason other than those mentioned in the ordinance. Therefore, the Director of Public Safety and of the Police Department, Commissioner Lowe, had no authority to establish a probationary period for an appointee to the regular police department (Sastokas v. Freehold, 134 N.J.L. 305).
In the aforesaid communication, dated June 16, 1944, Director Lowe states that he is appointing respondent "as a special policeman as prescribed by Revised Statutes 40:47-19," and that his duties "shall include such police duties as may be directed and prescribed by the Chief of Police * * *." Section 40:47-19 of the Revised Statutes provides for the appointment of a "special policeman" for a term not exceeding one year. The purpose of the statute is to permit the appointment of special guards or watchmen, having police powers, for guarding banks, railroad yards, warehouses, parks, *Page 608 
school-crossings, and other places, where extra or special protection is required, and also to permit the appointment of special policemen to assist temporarily the regular police force during an emergency, or during unusual conditions. The respondent was not appointed for any of those purposes. He was appointed to perform the usual duties of a police patrolman as a member of the regular police force; he took an oath of office to perform those duties as a member of the regular police force; and he has been doing so for the past five years. Section 40:47-19 of the Revised Statutes does not provide any authority to appoint a "special policeman" to perform those duties which come within the scope of the usual and ordinary duties that are performed regularly by members of a municipal police force.
Moreover, it is the law and the policy of the State of New Jersey to protect the members of a municipal police force, who perform the usual and regular duties of a policeman, by giving them tenure of office during good behavior. That policy cannot be avoided and nullified by appointing "special policemen" pursuant to R.S. 40:47-19 to perform, during normal conditions, the same duties which are performed by the members of the regular police force. That which "cannot be done directly cannot be accomplished by indirection" (Sastokas v. Freehold, 134 N.J.L. 305).
Furthermore, section 40:47-19 provides that a "special policeman" appointed pursuant to that law must be appointed by the governing body; therefore, such an appointment could not be made by the Director of the Department of Public Safety (McQuillin Municipal Corporations (2d ed.), Vol. 2, p.
152, § 473; Sykes v. Heinzman, 100 N.J.L. 12; Seaman v.Strollo, 105 N.J.L. 570). And, since the Legislature has expressly vested that authority in the governing body, such authority could not be delegated to one of its members (McAvoyv. Trenton, 82 N.J.L. 101).
Consequently, the written communication dated June 16, 1944, purporting to appoint respondent a "special policeman" is a subterfuge and contrary to the actual facts of respondent's previous appointment which occurred sometime *Page 609 
between June 5 and June 8, 1944. The said communication was an attempt to evade the express provisions of the law, and it is opposed to public policy. The communication of June 16, 1944, is, therefore, illegal, void, and of no effect.
In the case of Dolphin v. Mayor and Council of Town ofKearny, 116 N.J.L. 58, the prosecutor was appointed water purveyor of the Town of Kearny. Before he was appointed, the prosecutor was required to sign in blank a resignation from the office. The court held that such an act was detrimental to the public interest, and was therefore void.
At the meeting of the Board of Commissioners held on June 27, 1944, nine days following the communication dated June 16, 1944, Mayor Lowe officially reported to the governing body of Ridgefield Park that, pursuant to the police ordinance
establishing a police department, he had appointed respondent a "special patrolman." The following is an excerpt from the minutes of the meeting of the Board of Commissioners held on June 27, 1944:
"Mayor Lowe reported that Harold J. Jones had been appointed a special patrolman; that this is a temporary appointment and can be terminated at any time in accordance with the ordinance."
Of course, the appointment of respondent as a "special patrolman" pursuant to the village police ordinance, as mentioned in the minutes of June 27, 1944, is at noticeable variance with the appointment as a "special policeman" under section 40:47-19 of the Revised Statutes, as mentioned in the communication dated June 16, 1944. The Director of Public Safety testified that both communications relate to the same appointment, yet they are irreconcilably different. This variance adds to the confoundment in which this appointment has been entangled.
However, the Director of Public Safety had no authority to appoint respondent a "special patrolman" under the ordinance. The village police ordinance does not provide for the appointment of a "special patrolman." The ordinance gives to the director of the police department the authority to establish a "Reserve Force by appointing Reserve Policemen *Page 610 
or Policewomen in such numbers as he may determine," and empowers the director to "detail for special service, whenever, in his opinion, it shall be necessary, as many Reserve Policemen or Policewomen and, for as long a time as he shall deem necessary." The respondent was not a member of any "Reserve Force," hence, his appointment as a "special patrolman" pursuant to the police ordinance was also illegal, void, and of no effect.
The unquestioned fact, and one which was conclusively proven, is that between June 5 and June 8, 1944, the respondent was orally appointed a patrolman in the Ridgefield Park Police Department by Mayor Lowe as the Director of the Department of Public Safety and of the police department under the police ordinance. The appointment took effect June 16, 1944. Mayor Lowe had full authority to make the appointment. In fact, he has been the Director of Public Safety and of the police department continuously since sometime prior to June 5, 1944. Pursuant to that appointment, the village clerk took the respondent's oath of office as a patrolman in the Ridgefield Park Police Department on the afternoon of June 16, 1944. The chief of the police department gave the respondent his police equipment and police badge signifying that he was a member of the regular police force; and assigned him to duty, on foot, patrolling the business section of Main Street as a regular police patrolman. This appointment has never been challenged, and it is not now being challenged.
Since June 16, 1944, over five years, respondent has been performing consistently the usual and customary duties of a patrolman of the Ridgefield Park Police Force, and he has been receiving the compensation to which such a policeman is entitled to receive under the police ordinance. The respondent was not appointed to perform any "special" police duties. In fact, as we have seen, Mayor Lowe had no authority to appoint a "special policeman," or a "temporary policeman." His only authority was to make appointments to the police department. The court will, therefore, assume that respondent's appointment, which was made between June 5, and June *Page 611 
8, 1944, was regularly made (O'Neill v. Bayonne, 99 N.J.L. 430).
At the time of respondent's original appointment, that is, between June 5, and June 8, 1944, he was employed as a crane operator by the Aluminum Company of America. He left that position to accept the appointment to the Ridgefield Park Police Force. After several years of service on the police force, he took a police examination, which he passed. He has discharged his duties as a regular Ridgefield Park policeman for the past five years efficiently and faithfully. As a result, the Director of the Police Department, on March 28, 1947, wrote a letter to the village clerk in which he said that he had appointed the respondent "as a permanent member of the Ridgefield Park Police Department, with the rank of patrolman; such appointment to be retroactive to June 16, 1944, the date he originally joined the department." On April 8, 1947, the foregoing communication was reported to the Board of Commissioners. At no time has the Director of Public Safety and of the Police Department, or the governing body of Ridgefield Park questioned the regularity of the appointment of respondent to the Ridgefield Park Police Department. Because of these facts, if there was any irregularity in the original appointment; that is, the appointment which was made between June 5 and June 8, 1944, the Director of the Department of Public Safety and the Village of Ridgefield Park would now be estopped from setting up any such irregularity as a bar to respondent's appointment. 31 C.J.S., Estoppel, § 144,p. 428. Since the municipality itself would be estopped from claiming any irregularity in said appointment, so a taxpayer of the municipality would also be estopped from asserting any such irregularity.
The court, therefore, finds that the respondent was appointed a patrolman of the Ridgefield Park Police Department between June 5, and June 8, 1944, which appointment took effect June 16, 1944, and that said appointment was regularly and legally made. Since the Director of Public Safety has no power to remove a member of the regular police force, except for cause, no act of his could revoke such an *Page 612 
appointment, once it is made, without the consent of the appointee (McQuillin on Municipal Corporations (2d ed.),Vol. 2, p. 174, § 484; Whitney v. Van Buskirk, 40 N.J.L. 463; Board of Education of Boyle County v. McChesney, 235 Ky. 692, 32 S.W.2d 26).
These proceedings will, therefore, be dismissed.
 *Page 1