6 N.J. Super. 275 (1950)
71 A.2d 135
JAMES CARONIA, PLAINTIFF-APPELLANT,
v.
CIVIL SERVICE COMMISSION OF NEW JERSEY AND CITY OF ORANGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1950.
Decided February 3, 1950.
*277 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Abraham L. Friedman argued the cause for the plaintiff-appellant; Mr. Samuel L. Rothbard, of counsel (Messrs. Rothbard, Harris & Oxfeld, attorneys).
Mr. John W. Griggs, Deputy Attorney General, argued the cause for the defendant-respondent, Civil Service Commission of New Jersey (Mr. Theodore D. Parsons, Attorney General, Attorney)
Mr. Edmond J. Dwyer, attorney for defendant-respondent, City of Orange, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
The Civil Service Commission of New Jersey determined that the status of plaintiff, James Caronia, as a chanceman in the Police Department of the City of Orange, did not entitle him to preferential assignment to the duty performed by special officers in directing traffic at school intersections. Plaintiff appeals from that determination.
*278 Caronia has been a chanceman of the City of Orange since 1924. As such, he is a member of the regular police department of that municipality. See Caronia v. Caldwell, 123 N.J.L. 266 (E. & A. 1939), wherein it was held that "* * * the chancemen are not temporary employes, but are regular members of the department appointed for part time service. They serve such days as they are required, and get paid only when they work, but they are regular members of the department entitled to tenure and to keep their positions unless discharged after hearing on charges, to the same extent as the chief or any other member. * * *" As such chanceman, it is conceded that Caronia did regular police duty for the City of Orange for extended periods of time during the years 1944-1948 inclusive, but that no duty was assigned to him for the period from January 1, 1949, to May 23, 1949, during which latter period of time three special officers, appointed under authority of R.S. 40:47-19, performed special duty at school intersections, assembling school children and escorting them across the street. These special officers performed what is characterized as "split shift" duty, that is, they escorted the school children across the street at the beginning of the morning session, then at noon time and at the conclusion of the afternoon session, in connection with which they did not wear a uniform nor were they permitted to use any clubs, revolvers or any other accessories usually carried by a regular police officer. The insignia of their authority was a shield worn on their caps and a police badge "on their left breast." Subsequent to May 23, 1949, Caronia has been assigned to and has performed regular police duty and was so engaged at the time of the hearing before the Civil Service Commission. His contention is limited to the period of January 1, 1949, to May 23, 1949, asserting that he was deprived of performing police duty and that his rights as a chanceman were violated when that duty was assigned to the special officers engaged for that purpose.
The City of Orange contends (1) that Caronia was offered school duty but refused to accept it; (2) that the duty performed by the special officers was not regular police duty and, *279 therefore, Caronia was not entitled as a matter of priority to that assignment; and (3) that the City of Orange was authorized under R.S. 40:47-19 to appoint and employ the three special officers for the school duty assignments.
There appears to be little disagreement about the factual situation, except with respect to the offer of the school duty assignment. Caronia admits that such an offer was made to him by the Director of Public Safety, but insists that the duty was to be performed as a special officer, and not as a chanceman. The evidence is clear that he refused to accept such an assignment unless it were as a chancman and not as a special officer. It is conceded that the school duty was performed at all times by the special officers during the day time. Caronia admits that assignment to duty was made to him when he reported at the police department to ascertain if any employment was available; that during the entire period in question he never appeared at the police department during the daytime to make such inquiry; that he reported nightly at 7:30 o'clock. Caronia's appeal might well be dismissed because of his refusal to accept the assignment to do school duty when offered to him. Assuming, but not conceding, that the school duty performed by the special officers was regular police duty, Caronia could not justifiably refuse to perform it by laying down a condition that it be specifically assigned to him as a chanceman. In fact, Caronia conceded the authority of the Police Commissioner to make all assignments when he testified:
"Q. But you were pretty well established on the night shift, weren't you? A. I was. It's customary to take any shift they want. It's up to them. I don't control what assignments they are going to put me on." (Italics ours.)
The regulation of the police force by assignment of its members to particular duties, according to the requirements of the service and the special fitness of the individual members for these duties, must certainly be left to the discretion of the appointing authority, if they are to have any control or any liberty to act for the promotion of the efficiency of their department. McManus v. Newark, 49 N.J.L. 175 (Sup. *280 Ct. 1886); Gutheil v. Nelson, 86 N.J.L. 1 (Sup. Ct. 1914); affirmed, 87 N.J.L. 691 (E. & A. 1915). However, to decide the case on the ground of Caronia's refusal to accept the school duty assignment would be to beg the important questions involved in this appeal. We proceed, therefore, to a discussion and determination of the legal questions, to wit: Was the City of Orange vested with authority to appoint special officers for the school duty assignment and did such assignments of others result in a suspension or dismissal of Caronia or deprive him of a preferential right to such employment?
R.S. 40:47-19 provides as follows:
"The governing body may appoint special policemen for a term not exceeding one year and revoke such appointment without cause or hearing. They shall not be members of the police force, and their powers, rights and duties shall immediately cease at the expiration of the term for which they were appointed, or upon revocation of their appointment. They may be furnished with a badge upon the deposit of a sum to be fixed by the governing body, which may be refunded on the return of the badge. A fee to be fixed by the governing body may be charged for issuing to any such officer a certificate of appointment."
Plaintiff argues that it is common knowledge that this statute was intended and is employed by private persons and business corporations to obtain special officers who are clothed with sufficient police power to safeguard and protect their private property and interests. From a careful reading of the statute, it is apparent that there is no restriction therein which limits the appointment of such special officers to the performance of private duty; in fact, a liberal construction of its language clearly evinces that the municipality was authorized to make appointments of the special policemen for special duty at intersections where public schools are located. The 1947 Constitution specifically provides for a liberal construction in favor of counties and municipalities of the provisions of the Constitution and "of any law concerning [them]." Mr. Justice Heher, speaking for the Supreme Court in Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17 (1949), at p. 22, stated:
*281 "* * * A municipal corporation is a government of enumerated powers, acting by a delegated authority. It is a creature of the Legislature; and it possesses only such rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality. It has no inherent jurisdiction to make laws or adopt regulations of government. New Jersey Good Humor, Inc., v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1939); City Affairs Committee v. Jersey City, 134 N.J.L. 180 (E. & A. 1945). The Constitution of 1947, effective January 1, 1948, secures to counties and municipal corporation powers `of necessary or fair implication' or `incident' or `essential' to those granted in express terms; and it enjoins a liberal construction in their favor of the provisions of the Constitution and `of any law concerning' them. Article IV, section VII, paragraph 11."
In view of the authority of the municipality to make the appointments of the special officers, the question then arises as to whether Caronia was entitled to priority of appointment and assignment to such duty. The special officers performed no duty except escorting school children safely across the street and in the performance of that duty regulated the traffic in such manner as the occasion might require. Therefore, it was merely a limited phase of the duty performed by the regular police assigned to full time traffic duty at congested traffic centers. Caronia is a permanent member of the regular police department and as such is entitled to employment when there is a vacancy in the police department or need for the performance of the duties of a regular policeman. This was determined in the case of Caronia v. Caldwell, 126 N.J.L. 134 (Sup. Ct. 1941), when Justice Heher, speaking for that court stated:
"It suffices to add that, while under the local ordinance the duties of chancemen are `continuous,' they serve only `as necessity requires, to supply temporary vacancies in the regular force.'"
It will be noted that R.S. 40:47-19 provides, inter alia, "* * * They (special policemen) shall not be members of the police force, and their powers, rights and duties shall immediately cease at the expiration of the term for which they were appointed, or upon revocation of their appointment *282 * * *." (Parenthesis ours). It is quite clear from this provision of the statute that the special policemen are not and cannot be considered as members of the regular police force. It follows, therefore, that Caronia's status was not impaired or jeopardized, as the special officers were not appointed to take the place of any members of the regular police department, but merely for a limited and special duty. During the period of time represented by Caronia's complaint, it is conceded that there were no vacancies in the regular police force. Consequently, there was no employment which could have been assigned to Caronia.
The judgment of the Civil Service Commission is affirmed.