197 N.J. Super. 78 (1984)
484 A.2d 53
IN THE MATTER OF HILTON RAWLS.
Superior Court of New Jersey, Law Division Essex County.
Decided July 11, 1984.
*80 Hilton Rawls, pro se.
Richard H. Iacobucci, individually and trading as Master Investigative and Detective Agency, pro se.
Hugh Gallagher, Assistant Corporation Counsel for the Chief of Police of Newark (John J. Teare, Corporation Counsel of the City of Newark, attorney).
VILLANUEVA, J.S.C.
The issues involved are whether a special policeman must obtain a permit to carry a handgun when employed as an armed security guard for a private security company and whether he can wear his special policeman's uniform and badge while so employed.
The primary question is whether a special policeman, employed as a guard by a security company, is controlled by the Private Detective Act of 1939, N.J.S.A. 45:19-8 et seq., rather than the law governing special policemen, N.J.S.A. 40A:14-146.
The court holds that such employment does not constitute "official duties" of a special policeman and it violates the rules governing employees of a private detective agency. N.J. *81 A.C. 13:55-1.5. Therefore, he is not permitted, without the requisite permit, to carry a handgun or other firearm while employed as a security guard for a private security company, nor may he wear his special policeman's uniform and badge while so employed.
This matter arose when the court learned, in a routine check, that a private security company employed a special policeman, wearing his uniform and badge, to act as an armed security guard at a municipal building, although the guard had never obtained a permit to carry a handgun.
Hilton Rawls was an employee of Master Investigative and Detective Agency (Master) since early 1983 working as an armed security guard at a municipal building in Newark, where he is a special policeman by legal appointment, wearing his special policeman's uniform with his badge displayed.
Even after this court questioned Rawl's status as an armed guard, he not only continued such activity but sought to have the court approve similar part-time employment for another security company. The court obviously could not grant this request because no carry permit had ever been issued to him.
Therefore, the court[1], sua sponte, ordered both the special policeman and the security company to show cause why they should not be restrained from such activity without said employee qualifying under the Private Detective Act and obtaining a permit to carry the gun. Rawls left this employment on June 28, 1984 after receiving the order to show cause.
The New Jersey State Special Police Association, Inc., and Newark Special Police Association intervened as amici curiae.
Although Iacobucci and Master received the order to show cause on June 28, 1984, they failed to appear at this hearing. *82 When the court called the office of Master to inquire why Iacobucci was not in court, an answering service said Iacobucci was in Europe and would return in two weeks. Rawls testified that since he received the order to show cause, he has attempted to contact Iacobucci without success. Therefore, the hearing proceeded without Iacobucci.
Unknown to the court until the hearing herein, the State Police had begun an investigation in March 1984, into a complaint that a sheriff's officer, Donald Bartell, was acting for a private detective agency as an armed security guard in the uniform of the Essex County Sheriff's Office, at a city-owned building in Newark. A check of the private detective unit files revealed that this subject was not registered as an employee of Master, required by N.J.A.C. 13:55-1.3.
At that time the state police also learned that Rawls and two other employees were not registered as employees of Master, although Rawls had been employed continuously since early 1983. The holder of a private detective license must file a verified statement of employment signed by the employee, together with his fingerprints, within 48 hours. N.J.S.A. 45:19-16.
On April 23, 1984, Sergeant Richard De Ghetto of the state police interviewed Iacobucci in reference to that investigation. Iacobucci assured DeGhetto that he would correct the problems immediately and that they would not reoccur.
Master apparently contended that since Rawls is a special policeman, he may carry his handgun wherever he is employed in Newark and that the Private Detective Act does not apply to him because he was acting as a special policeman.
The Legislature has empowered municipalities to employ three types of policemen, regular, temporary and special. L. 1917, c. 152, Art. XVI, §§ 1, 3 and 7 at 359-361 (1924 Suppl. § 136-1607). These provisions have been continued substantially unchanged to the present. Until 1953, special policemen *83 were prohibited from carrying firearms. L. 1953, c. 228, § 1 at 1685 eff. July 14, 1953.
When they received such authority to carry firearms, they were prohibited from carrying a revolver or similar weapon "when off duty." This restriction was modified in 1982 to provide an exception solely in the City of Newark, under certain circumstances, to permit a special policeman to carry a revolver when off duty within that municipality if he obtains a revocable permit from the director of the municipal police force and mayor. L. 1982, c. 154; N.J.S.A. 2C:39-6a(7) and N.J.S.A. 40A:14-146.
Since 1953, the Legislature has afforded special policemen a limited exemption from obtaining a permit to carry a handgun while engaged in the actual performance of their duties.
This exemption now states:
Sec. 2C:39-5 does not apply to any special policeman authorized to carry a revolver or other similar weapons while off duty within the municipality where he is employed, as provided in N.J.S. 40A:14-146, or a special policeman ... appointed by the governing body of any county or municipality ... while engaged in the actual performance of his official duties and when specifically authorized by the governing body to carry weapons. [N.J.S.A. 2C:39-6a(7). L. 1982, c. 154, (formerly N.J.S.A. 2A:151-43)]
Special police have been used for many years to carry on the full panoply of police functions during limited periods. As early as 1837, the Newark City Council passed an ordinance authorizing the mayor to appoint special police to aid on occasions when necessary to preserve the peace and good order and to increase the public security and protection of the citizens. Charter of the City of Newark with the Ordinances and By-laws passed by the Common Council 107 (1838). When Newark created its police department in 1857, the mayor retained this power to appoint special police for temporary duty as necessary to preserve peace and order. Thus, the Mayor of Newark in 1864 and 1866 appointed special police to act in concert with the regular police on election day. He appointed 40 special police to maintain peace during a railroad strike in 1877. The History of the Police Department of Newark 63, 93 *84 (1893). Special police "shall be under the supervision and direction of the chief of police" and "shall comply with the rules and regulations applicable to the conduct and decorum of the regular policemen." N.J.S.A. 40A:14-146. Belmar Policemen's Benev. Ass'n v. Belmar, 89 N.J. 255, 265 (1982).
A section of the statute governing special policemen provides:
The identification card, badge or other identifying insignia of any person who serves as a special policeman, ... or who performs under the law any special police or law enforcement function ... shall clearly state the name of the agency by which any such person is employed and shall clearly distinguish any such person from the members of any regular and permanent State, county or municipal police department. [N.J.S.A. 40A:14-146.6]
The purpose of this section is to enable the public to distinguish the permanently employed, regular, professional police officers from other police and quasi-police employees and volunteers. Atty.Gen.F.O. 1977, No. 25.
The statute N.J.S.A. 40A:14-146 et seq., contains little guidance as to the scope of duties to be performed by special police officers. However, it provides that "they shall not be members of the police force" and that they cannot carry firearms when off-duty. This would appear to reflect a legislative determination that special police officers should not be equated with the regular, permanent members of a municipal police force. This proposition was reinforced in State v. Jones, 4 N.J. Super. 599 (Law Div. 1949), rev'd on other grounds, 4 N.J. 207 (1950).
Detective Vincent Martin, speaking on behalf of the Chief of Police of Newark, stated that before special policemen are appointed, they are required to present a letter from an employer in the private sector (and obviously not from a detective or security agency) requesting such appointment, which comes only after direction from a councilman or other police authority. Such was the procedure followed by Rawls in 1976 when he was first appointed after the council received a letter requesting employment at Beth Israel Hospital. Every year a similar letter has been received. In 1983 Rawls did, however, mention *85 his employment with Master. Therefore, he did not attempt to conceal that employment.
The policy of Newark, as evidenced in the statute N.J.S.A. 40A:14-146; is to appoint and use special policemen in the private sector, but not to be employed by a private detective agency. In Newark, special policemen are all advised that their function is primarily, if not exclusively, to be employed by a private business and that they are not to advertise nor solicit for work with various agencies.
The Newark Police Department has a rule, known by Rawls, that a special police officer must sign a roster at headquarters, stating where he is going to work, either daily or monthly depending on the continuing nature of the employment. Rawls apparently signed the roster monthly, without disclosing his status as a security guard for a private detective agency. Another rule prohibits special police officers from working in plainclothes without express permission from the chief of police.
Regulation of police officers, regular or special, must be left to the discretion of the appointing authorities. Caronia v. Civil Service Commission of N.J., 6 N.J. Super. 275, 279 (App. Div. 1950).
Both the New Jersey State Police Association, Inc. and the Newark Special Police Association stated that bulletins are posted by all police departments regarding limitations imposed on special policemen and the necessity of complying with the Private Detective Act when employed as security guards for a security company. They further object to such unauthorized employment because of the scarcity of jobs for the 225 special policemen in Newark, many of whom are unemployed because detective agencies have failed to comply with the law.
Master Investigative and Detective Agency is governed by the Private Detective Act of 1939 because the term "private detective business" shall mean:

*86 The business of conducting a private detective agency.... . Also it shall mean the furnishing for hire or reward of watchmen or guards or private patrolmen or other persons to protect persons or property, either real or personal, or for any other purpose whatsoever.... [N.J.S.A. 45:19-9]
A person who merely works for a licensed private detective agency is not himself engaged in the private detective business, even though, in acting on behalf of the agency, he performs those activities enumerated above which subject the agency to licensure. Indeed, N.J.S.A. 45:19-15 specifically exempts agency employees from the requirement of obtaining a license.
The regulatory provisions of N.J.A.C. 13:55-1.8 precluding a police officer from becoming or acting as a qualifying member, officer, or director of a private detective agency, do not prohibit the officer from becoming or acting as an employee. This conclusion is further buttressed by the uncontroverted fact that private corporations or industry may hire police as employees to perform security work. Atty.Gen.F.O. 1978, No. 11.
A guard for a security company may, while in uniform, and while on the premises of the employer of the licensee where he is so acting, wear a badge or shield inscribed with the name of the license holder, number, and the word "guard" or "special service." N.J.S.A. 45:19-19. However, the statute does not authorize a guard to wear a special policeman's badge, so the Legislature obviously did not authorize such an activity or wearing such a badge.
The activity of Hilton Rawls in wearing his special policeman's uniform and badge when employed as a security guard by a detective agency was clearly violative of a rule adopted by the Division of State Police, pursuant to authority delegated by N.J.S.A. 45:19-8 et seq., to implement the Private Detective Act of 1939. In particular it provides:
No particular type or style of uniform or badge is prescribed in these rules, other than required as to badges in N.J.S.A. 45:19-19 or prohibited by Chapter 2 of Title 52 of the Revised Statutes as to the use, exhibit and display of the Great Seal of the State of New Jersey, but no licensee or employee of a licensee, shall, with intent to deceive or confuse the public, use a title, badge, *87 uniform or other insignia which is likely to be confused with that of any law enforcement officer of the Federal government, a state or any political subdivision thereof. [N.J.A.C. 13:55-1.5]
Wearing a special policeman's uniform and police badge is certain to confuse everyone that the guard is a governmental law enforcement officer.
The State Police informs all detective agencies of this regulation, and the superintendent's interpretation, that a special policeman or sheriff's officer is prohibited from wearing his uniform and badge while employed as a security guard for a private detective agency.
The possession of firearms by anyone, including special policemen, is also regulated by a statute which states that no one shall have in his possession or carry any handgun without first having obtained a permit to carry the same as provided in N.J.S.A. 2C:58-4. N.J.S.A. 2C:39-5b. Of course, there are exemptions provided in the statute. N.J.S.A. 2C:39-6.
There is a clear legislative distinction intended between those persons authorized to carry firearms at all times and those whose authority to carry firearms without a permit is circumscribed. For example, United States marshals, sheriffs and regular police officers may possess firearms at all times without having obtained permits. N.J.S.A. 2C:39-6a(2), -6a(4) and -6a(7). Other persons, including special policemen, members of the armed forces and prison guards may only carry firearms during the performance of their duties as such. N.J.S.A. 2C:39-6a(7), -6a(1) and -6a(5).
It is clear that the Legislature intended to restrict the carrying of a firearm by a special policeman without the necessary permit to the times when a special policeman is "engaged in the actual performance of his official duties." N.J.S.A. 2C:39-6a(7).
Although an employee of a private detective business is not personally subject to licensure, the holder of a license issued by the superintendent is responsible for the actions and conduct of his employees. N.J.S.A. 45:19-15, -16, -17, -18. The superintendent *88 has also promulgated specific regulations dealing with the fingerprinting, identification and badges of employees. N.J.A.C. 13:55-1.2, -1.3, -1.4, -1.5.
Even a constable may not engage in the occupation of a security guard at various private business enterprises without a license under the Private Detective Act. Atty.Gen.F.O. 1976, No. 6. However, he does not have to be so licensed if he is employed by a licensed private detective or security guard business. Ibid. This still does not give a constable the right to carry a firearm without obtaining a permit to carry it.
Regular members of a municipal police department during their off duty hours or any other person who is licensed under the Private Detective Act may engage in police-related activities for private commercial establishments as employees without being in violation of the Private Detective Act, so long as those activities do not constitute the business of a private detective security guard or watchman. Atty.Gen.F.O. 1978, No. 11.
Private detectives are not exempt from the permit requirements of the statute relating to the carrying of a pistol or revolver. State v. Nicol, 120 N.J. Super. 503 (Law Div. 1972). That case held that the exception for a constable[2] only applies to a constable "when in discharge of his duties." Likewise, the exception for a special policeman applies "only while engaged in the actual performance of his official duties."
Official duties do not include employment as a security guard for a licensed private detective agency.
There is consequently a clear legislative indication to leave free of regulation those persons who act as employees of private commercial establishments to perform police-related responsibilities for them at their request and under their direction.
*89 Regular members of a municipal police department during their off duty hours or any person may engage in police-related activities for private persons or entities without being in violation of the Private Detective Act, so long as those activities do not constitute the business of a private detective or private security guard or watchman. However, no one can work for a private detective agency without being subject to the regulations of the Private Detective Act, as implemented by N.J.A.C. 13:55-1.1 et seq. and N.J.S.A. 2C:58-4.
Therefore, Richard H. Iacobucci and Master Investigative and Detective Agency are restrained from permitting Hilton Rawls or any other special policeman from being employed as a guard, armed with a firearm, unless and until Master has complied with N.J.A.C. 13:55-1.1 et seq. and said employee has obtained a permit to carry a firearm. Hilton Rawls is enjoined from working as a guard, armed with a firearm, for any detective or security company, without having first obtained a permit to carry a firearm, and is enjoined from wearing his special policeman's uniform and badge when so employed.
NOTES
[1] This judge is hearing the matter because he was designated by the assignment judge of the county as the single judge to issue carry permits and to hear all matters and appeals related thereto. Siccardi v. State, 59 N.J. 545, 557 (1971).
[2] The exemption for a constable, formerly provided in N.J.S.A. 2A:151-43f, was repealed when the Code of Criminal Justice was adopted in 1979.