**George BOWMAN and Fraternal Order of Police, Garden State Lodge # 3, Plaintiffs,**

v.

**TOWNSHIP OF PENNSAUKEN, Mayor Hugh O'Connell and Council Members Joseph Getz, Mark Lohbauer, William Orth, Robert Singer, John Jacobs, and Hugh O'Connell and Chief of Police Nicholas J. Petitte, Jr., Defendants.**

Civ. A. No. 87–87.

United States District Court, D. New Jersey.

March 28, 1989.

Ralph H. Colflesh, Jr., Colflesh & Burris, Moorestown, N.J., for plaintiffs.

John Philip Maroccia, Cherry Hill, N.J., for defendants.

## OPINION

RODRIGUEZ, District Judge.

This matter was presented to the court soon after defendant Township of Pennsauken[1] passed Resolution 86–310 governing the outside employment of off-duty police officers. Specifically, the Resolution prohibited any direct employment of off-duty officers in security positions and required the channeling of all such employment through the Township police department under a number of terms and conditions set forth in a Hold Harmless and Indemnification Agreement. Plaintiffs, George Bowman and Fraternal Order of Police, Garden State Lodge # 3 (hereinafter FOP),[2] filed the complaint in this matter challenging the constitutionality of the Resolution and immediately sought a temporary restraining order to enjoin its implementation. The court granted the temporary restraints and scheduled a hearing for a preliminary injunction. At the hearing, the parties agreed to continue to operate under the restraints until the court decided whether to grant a preliminary injunction.[3]

---

1. Also named as defendants are the Township Mayor, Council Members, and Chief of Police. Defendants will be collectively referred to as the Township.

2. The complaint was filed by George Bowman, individually and as president of the FOP, and by the FOP on behalf of its members.

3. It appears that the parties have captioned the supplemental briefs as support or opposition to "permanently enjoin" the Township from enforcing the resolution. After review of the briefs and the court docket, it is clear that the court is deciding a motion for a preliminary injunction.

The parties were requested to submit additional briefs and decision was reserved. The briefing schedule closed in September 1988. The court now addresses the issue of whether preliminary injunctive relief should be granted. For the reasons set forth below, this court holds that the Resolution violates the officers' equal protection and due process rights guaranteed by the fourteenth amendment. Accordingly, the court will grant the preliminary injunction restraining the Township from implementing and enforcing the Resolution. In addition, this opinion serves as the court's findings of facts and conclusions of law.

## I.

FOP is the bargaining representative for all police officers below the rank of sergeant in the Police Department of the defendant Township. The Collective Bargaining Agreement between the parties covering July 1, 1984 through June 30, 1986 included a regulation, Article XXXI, governing the outside employment of FOP members. During negotiations for a successor agreement, defendant Township proposed a ban on all outside employment of FOP members but later withdrew that proposal. At the time the complaint was filed the parties had entered into arbitration in an effort to reach a successor agreement. A successor agreement was signed on January 25, 1988 covering the period from July 1, 1986 to June 30, 1989.

On October 27, 1986, the Township Committee adopted Resolution 86–310 regulating the "moonlighting" activity of FOP members.[4] The Resolution required all prospective employers of Pennsauken police officers in an off-duty security capacity to execute a Hold Harmless, Indemnification and "Moonlighting" Agreement (hereinafter Hold Harmless and Indemnification Agreement) before the police chief would issue any work permits. The agreement provided that the employer would contact the Chief of Police directly about present and future hiring of any police officer for off-duty security employment. In addition,

the Hold Harmless and Indemnification Agreement governed the payment and hiring of the officers under the terms and conditions summarized as follows:

* The employer shall pay the Township an amount equal to the officer's salary plus an administrative fee (the Township would then distribute the salary to the officer).

* Prior to any employment of off-duty officers in moonlighting positions, the employer shall co-insure each officer on its workers' compensation insurance policy and shall co-insure the Township as additional insureds at no cost to the Township.

* The employer shall co-insure the Township and its off-duty police personnel hired in a moonlighting capacity in a liability insurance policy in the minimum amounts of one million dollars for each moonlighting off-duty officer; and "[s]aid insurance policy shall contain provisions that in the event of any settlement or judicial determination that the aforesaid moonlighting off-duty Pennsauken police employee [is] determined to be either an employee of the employer or an employee of the Township, said insurance company shall pay all the Township's costs of litigation including attorney's fees, costs and any settlement or monies required to be paid by the Township of Pennsauken shall be paid by the insurance company as indicated herein above." Failure to obtain any of these insurance policies constitutes a breach of the agreement and the Township shall have the right to cancel all work permits for moonlighting.

* As further consideration for the Township permitting moonlighting employment, the employer agrees to hold the Township harmless and indemnify the Township for any acts committed by the moonlighting officer in the course of his moonlighting activities, "whether or not it is judicially determined or agreed between any parties that the

---

4. The Resolution described moonlighting as "the process of hiring off-duty policemen in the ca- pacity of off-duty security guards." Resolution at ¶ 2.

'moonlighting' Pennsauken police officer was an employee of the Township or an employee of the employer." The agreement "shall include any settlement or verdict monies which accrue as a result of any actions of any 'moonlighting' Pennsauken police officer."[5]

Prior to adopting the Resolution, the Township required under the collective bargaining agreement that it be notified of any police officer's moonlighting activities but specifically permitted off-duty security work in the Township. In addition, pursuant to the collective bargaining agreement, the Chief of Police or his designee would issue a work permit which could not be unreasonably withheld.[6] As a result of the Resolution, the Township, in effect, became a broker in the employment of police officers in off-duty security work and prevented officers from direct employment by third-party employers.

Copies of Resolution 86–310 were sent under the signature of the Chief of Police, to businesses employing police officers within the Township in November of 1986. Soon thereafter, FOP members were notified by the Chief of Police that their work permits for security work would be rescinded if their employers failed to comply affirmatively with the requirements of Resolution 86–310. Furthermore, no new permits would be issued unless the prospective employer complied with the Resolution.[7]

Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that the resolution violates both the equal protection clause and the due process clause of the fourteenth amendment and the rights guaranteed to FOP members under the New Jersey Constitution. In addition, plaintiffs contend that the resolution impermissibly prohibits officers from exercising a fundamental right to enter into a contract with a private employer. With respect to the equal protection claim, plaintiffs allege that the resolution creates impermissible classes of moonlighting police officers. Specifically, plaintiffs claim that two classes of officers are created by the resolution: (1) officers who provide non-security services and (2) officers who provide security work. Plaintiffs argue that this classification is not rational and does not address a legitimate state interest.[8] Plaintiffs argue that

---

**5.** A copy of the Resolution and Hold Harmless and Indemnification Agreement is provided in the appendix of this opinion.

**6.** Article XXXI, entitled Outside Employment, of the existing collective bargaining agreement, provided:

A. Upon prior approval and receipt of work permit from the Director of Public Safety, Police Officers shall be entitled to engage in any lawful activity and obtain any lawful work while off-duty. Said approval and work permit shall not be unreasonably withheld.
B. It is understood that full-time Police Officers will consider their position with the Township as their primary employment. Any outside employment or activity must not interfere with the Police Officer's efficiency in his position with the Township and must not constitute any conflict of interest.
C. No Police Officer planning to or engaging in any outside employment or activity during their off-duty hours shall be permitted to wear the regulation uniform.
D. All outside employment shall be listed with the Chief of Police. The information provided to the Chief of Police shall include the employer's name, address and the Police Officer's work schedule.
The current article is identical. *See* Collective Bargaining Agreement July 1, 1986—June 30, 1989, Article XXXI.

**7.** On or about November 19, 1986 and prior to filing the matter now before this court, plaintiff filed an "unfair practice charge" with the New Jersey Public Employment Relations Commission (hereinafter PERC) alleging that Resolution 86–310 violated the contract between plaintiff and defendant. On February 6, 1987, PERC issued an order restraining the Township from implementing the wage provisions of the Resolution. The Township filed a motion for reconsideration of the restraining order. PERC issued a complaint and scheduled a hearing on the unfair practice charge. Since that time, PERC has stayed its proceedings pending the decision by this court.

**8.** Plaintiffs originally asserted that the Resolution created the following impermissible classes of police officers: (1) officers engaged in off-duty security work within the Township; (2) those engaged in similar work outside the Township; and (3) officers engaged in off-duty non-security positions in (a) the Township and (b) outside the Township. Plaintiffs later amended this assertion by stating that Township police officers have not been permitted to engage in off-duty security work outside the Township "since the Township has never granted a permit for such purposes." Plaintiffs' Reply Brief in Support of Application to Permanently

the resolution violates the due process rights of the officers by depriving them of a previously enjoyed right to work.

In addition to disputing plaintiffs' substantive claims, defendants raise several procedural issues. First, they claim that this matter is not ripe for review because plaintiffs have failed to establish either an actual controversy or a violation of constitutional dimension. Second, defendants assert that PERC has exclusive jurisdiction of this matter pursuant to the New Jersey Employer–Employee Relations Act, N.J. Stat.Ann. § 34:13A–1, and that therefore, this court does not have jurisdiction over the action. Third, defendants argue that the court is prohibited from issuing an injunction under the Norris–LaGuardia Act and the collective bargaining agreement.

With respect to the constitutional claims, defendants assert that the resolution is rationally related to the Township's legitimate interest in protecting its taxpayers against the costs of litigation and potential liability. For support, the Township outlines a series of cases involving the Township which arose from action or inaction by officers engaged in moonlighting activities. Finally, defendants assert that the resolution does not violate the collective bargaining agreement between the parties.

## II. JURISDICTION OF THE CASE

### A. *Ripeness*

The court first addresses the issue of whether plaintiffs have alleged a case or controversy within the meaning of Article III of the Constitution. The basic inquiry is whether the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). Although plaintiffs need not engage in prohibited activity in order to present an actual controversy, a plaintiff challenging "a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). In addition, as the *Babbitt* court stated: "The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Id.* at 297, 99 S.Ct. at 2308.

■ Defendants contend that this matter is not ripe for adjudication because plaintiffs have not offered any proof that Pennsauken police officers are unable to moonlight in security positions because of the Resolution. In addition, defendants contend that the plaintiffs' claim that the Resolution is facially unconstitutional is without merit.

In support, defendants cite *Vorbeck v. Schnicker,* 660 F.2d 1260 (8th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982) and *Fort Wayne Patrolmen's Benevolent Ass'n v. City of Fort Wayne,* 625 F.Supp. 722 (N.D.Ind. 1986), where the courts held that similar claims were not ripe for adjudication. Plaintiffs counter that those cases are factually distinguishable from the instant case. In *Vorbeck,* a police officers' association brought suit for injunctive relief alleging that certain provisions of personnel regulations were unconstitutional. 660 F.2d at 1261. The court found that the regulations were cast in broad terms and that in the absence of "a concrete factual instance of enforcement as a framework for the court's decision," the dispute was not "ripe" for judicial resolution. *Id.* at 1266. Similarly, in *Fort Wayne,* the court found that plaintiffs' claim concerning a proposed change in the City's administrative policy regarding off-duty employment was not ripe for adjudication. 625 F.Supp. at 728. Although the *Fort Wayne* plaintiffs alleged that their members would suffer a loss of outside employment income

Enjoin Defendant at 1. Thus, plaintiffs assert that only two allegedly impermissible classes of officers were created—those working in security and those working in non-security positions. *Id.* at 9–10.

due to the regulation, the court stated that the lack of evidence regarding employer reaction to the not-yet-implemented revised version of the policy made the likelihood of injury less than "certainly impending." *Id.* at 726–27. In addition, the *Fort Wayne* court found that the plaintiffs' claim of injury based on violation of certain constitutional rights was not ripe since the policy had neither been implemented nor used against an officer. *Id.*

This court finds that plaintiffs have alleged a sufficient injury to meet the case or controversy standard. Contrary to the facts of *Fort Wayne*, the Township's Resolution has been adopted by the Township Committee. Also, FOP members have been notified that their work permits for security work would be rescinded if their employers failed to comply with the requirements of Resolution 86–310. Furthermore, defendants admit that under the adopted resolution, police officers are not permitted to contract security work at their own pay rate. *See* Answer for Defendants at ¶ 12. Rather, the Township has established a wage scale for the hiring of officers in security positions by third-party employers. Thus, even if the FOP members' alleged loss of income is speculative, the members' inability to contract security work and set their own pay rate meets the impending injury requirement. In addition, the resolution on its face clearly requires prospective employers of off-duty police officers in a security capacity to execute a Hold Harmless and Indemnification Agreement prior to the issuance of work permits. Plaintiffs challenge this requirement as violative of FOP members' constitutional rights. The Resolution also clearly is limited to security jobs and thus on its face presents a classification that the FOP members challenge under equal protection. Therefore, the development of a factual record may not assist the court because the crucial issue is purely legal: whether the

Resolution on its face violates the members' constitutional rights. *See, e.g., Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985). Accordingly, this court finds that the matter is ripe for adjudication.[9]

### B. *N.J. Employer–Employee Protection Act*

■ Defendants contend that the controversy falls within the purview of the New Jersey Employer–Employee Protection Act, N.J.Stat.Ann. § 34:13A–5.4(a)(1) and (5). Specifically, defendants allege that the New Jersey Public Employment Relations Commission (PERC) has primary jurisdiction to determine whether a dispute falls under collective negotiations and has exclusive jurisdiction over unfair labor practices. Thus, defendants contend that PERC is the proper forum for this case. Plaintiffs respond that an exhaustion of administrative remedies is not required for actions brought under 42 U.S.C. § 1983.

In a line of cases, the Supreme Court has followed consistently the principle first enunciated in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a plaintiff is not required to resort to state administrative procedures before bringing an action pursuant to § 1983. *See, e.g., Patsy v. Florida Board of Regents*, 457 U.S. 496, 500, 102 S.Ct. 2557, 2559, 73 L.Ed. 2d 172 (1982) (citing cases). As the *Monroe* court stated:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

365 U.S. at 183, 81 S.Ct. at 482.

In this case, plaintiffs' claims fall under 42 U.S.C. § 1983. This court has jurisdiction under 28 U.S.C. § 1343. Plaintiffs allege that the resolution on its face deprives the police officers of their rights protected

**9.** Plaintiffs argue that the effect of the adopted resolution has manifested and offer an exhibit of a police notice stating that a local employer had informed the chief of police that he no longer required the services of off-duty police officers. Plaintiffs contend that such action resulted from the resolution. Because the court has decided that plaintiffs have standing to challenge the facial constitutionality of the resolution as adopted, the court need not evaluate this evidence.

by the Fourteenth Amendment. The Supreme Court has concluded that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 516, 102 S.Ct. at 2568. Accordingly, plaintiffs need not resort to PERC or any state administrative proceeding as a prerequisite to seeking relief in this court under § 1983.

### III. JURISDICTION TO ISSUE INJUNCTIVE RELIEF

#### A. *Norris–LaGuardia Act*

■ Defendants contend that this case involves a "labor dispute" within the meaning of the Norris–LaGuardia Act, 29 U.S.C. § 101. The Act precludes federal courts from having jurisdiction to issue injunctive relief in "a case involving or growing out of a labor dispute" except in very limited circumstances. 29 U.S.C. § 101. In addition, Section 104 of the Act defines specific actions that cannot be enjoined by the federal courts.[10]

Although an action need not be listed in section 104 for the court to be precluded from issuing an injunction, clearly the action must fall within the meaning of a "labor dispute" in order to be covered by the Act. The Act defines "labor dispute" as follows:

The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c). In addition, "the critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n,* 457 U.S. 702, 712–13, 102 S.Ct. 2672, 2680–81, 73 L.Ed.2d 327 (1982) (quoting *Columbia River Packers Ass'n, Inc. v. Hinton,* 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)).

This court holds that the FOP members' claims do not fall within the meaning of a labor dispute. Rather, the FOP members are seeking a determination by this court of their federal constitutional rights and whether the adopted resolution violates those rights. Accordingly, the Norris–LaGuardia Act is inapposite.

#### B. *Arbitration Clause*

Defendants also assert that the FOP members must exhaust the administrative remedies provided in the collective bargain-

---

**10.** Section 104 of the Act provides:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;
(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;
(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;
(g) Advising or notifying any person of an intention to do any of the acts heretofore specified; and
(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and
(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104

ing agreement before resorting to the federal courts. Specifically, defendants contend that the disputed matter is subject to an arbitration clause in the agreement and that this court may only determine whether the dispute falls under the arbitration agreement. Plaintiffs respond that the binding arbitration clause of the collective agreement only relates to matters specifically contained in the agreement and argue that the Resolution pertains to outside employment matters not addressed by the agreement. In addition, plaintiffs argue that the dispute rises above a mere breach of contract, as illustrated by the issuance of a complaint by PERC.

Article VI of the collective bargaining agreement delineates the grievance procedure for FOP members. Under this article, grievance is defined as "an appeal by an individual Police Officer or the Lodge on behalf of an individual Police Officer or group of Police Officers, from the interpretation, application or violation of *terms* and *conditions* of this Agreement." Collective Bargaining Agreement, Article VI (emphasis added). As earlier stated, the outside employment article of the collective bargaining agreement provided that upon approval, the Director of Public Safety would issue a work permit for outside employment. *See supra* n. 6. The challenged Resolution requires not only that all outside employment be channeled through the chief of police but also that all outside employers of officers in security positions follow the pay scale established by the Township and execute a Hold Harmless and Indemnification Agreement.

■ Under the Federal Arbitration Act, federal courts must enforce contractual agreements to arbitrate disputes. 9 U.S.C. § 1. Certain claims, however, are exempted from the Act. It is unclear whether the challenged Resolution requirements fall within the terms and conditions language of the grievance definition. Even if the language of the agreement provides for arbitration of the matters governed by the Resolution, arbitration in this case would not be mandated. Although there is a strong public policy which favors arbitra-

tion in general, *see, e.g., United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960), the policy favoring arbitration is "inapplicable" where "the rights that plaintiffs seek to vindicate are not merely contractual, but arise from a federal statute." *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1501 (D.N.J.1985). Underlying this exception to the arbitration requirement is "the basic premise that when Congress has provided a judicial remedy for the denial of certain statutory rights, that forum may not be denied through the arbitration provisions of a collective bargaining agreement. A trilogy of Supreme Court decisions has left no doubt on that score." *Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3d Cir.1985) (citing *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed. 2d 302 (1984); *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). As the Supreme Court stated in *McDonald v. City of West Branch, Michigan*, "although arbitration is well suited to resolving contractual disputes, our decisions in *Barrentine* and *Gardner–Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." 466 U.S. at 290, 104 S.Ct. at 1803 (holding that § 1983 action is not precluded by prior arbitration decision).

■ In this case, plaintiffs seek the enforcement of their substantive rights of equal protection and due process guaranteed under the Constitution. Under the reasoning of *McDonald*, plaintiffs could have chosen to challenge the adopted resolution in both the federal court and under the arbitration procedures. *Id.* Thus, "logically" plaintiffs could have "chosen one of these fora but not the other." *McLendon v. Continental Group, Inc.*, 602 F.Supp. at 1502 (reasoning under *Gardner–Denver* that plaintiff need not exhaust arbitration procedure before bringing ERISA action). This court will not

impose a rule that precludes plaintiffs from asserting their statutory and constitutional rights. Accordingly, the court holds that arbitration is not a prerequisite to filing the instant complaint.

## IV. RIGHT TO CONTRACT

Plaintiffs assert that the resolution infringes on the fundamental right of the police officers to make a contract with a private employer. It is unclear, however, whether plaintiffs allege that the Resolution violates a right to contract or that it impairs existing contracts.

■ While it is true that article I, § 10 of the Constitution provides that "no state shall ... pass any ... Law impairing the Obligation of Contracts," this provision "is clearly designed to restrict states from passing laws which affect existing contractual obligations." *Fort Wayne Patrolmen's Benevolent Ass'n v. City of Fort Wayne*, 625 F.Supp. 722, 730 (N.D.Ind. 1986). As stated by the court in *Fort Wayne*, there is no constitutional right to the freedom to contract under article I, § 10. *Id.*

■ If plaintiffs are alleging that the resolution impairs existing contracts, this claim must similarly fail. In determining whether a violation of the contract clause exists, the "threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978))). Plaintiffs have not offered any evidence that any FOP members are employed under specific contracts. In addition, New Jersey law provides for at-will employment, except that termination cannot be contrary to public policy. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). The

*Fort Wayne* court, analyzing a similar resolution, stated that the proposed resolution

> does not change those at will contracts at all. It does, however, act to change the conditions surrounding the outside jobs that police officers work. An outside employer may consider those changes to be worth enduring because he likes the advantages gained by employing police officers, in which case the at will contracts will continue. Or the employer may decide that the changes make employing off-duty officers too expensive or risky, in which case he would fire the officer, which is clearly within his power as an at will employer. In either case, the contract remains the same—an at will employment contract. Thus, Policy III does not substantially impair the obligations of the outside employment contracts.

*Id.* at 730.

Although the Resolution provides for the Township to establish and broker the salary of off-duty police officers, plaintiffs have failed to demonstrate whether this clause substantially impairs existing contracts. Thus, the court holds that the Resolution does not impair outside employment contracts.

## V. EQUAL PROTECTION

■ Plaintiffs argue that the Resolution violates the FOP members' equal protection rights afforded under the fourteenth amendment.[11] The Equal Protection Clause of the fourteenth amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiffs assert that the Resolution and the accompanying Hold Harmless and Indemnification Agreement treats police officers differently and that this disparate treatment is not rationally related to a legitimate state interest. Specifically, plaintiffs contend that the Resolution creates

---

**11.** Plaintiffs also assert that the Resolution violates the equal protection rights afforded under the fifth amendment of the Constitution. The fifth amendment limits intrusion by federal government officials and does not apply to state action. *See, e.g., Fischer v. Driscoll*, 546 F.Supp. 861, 863 (E.D.Pa.1982). As plaintiffs have not alleged any action by the federal government, this fifth amendment challenge will not be considered.

impermissible classes of moonlighting officers: those officers who provide security work and those officers who provide non-security services. Only those officers working in security positions are required to follow the procedure outlined in the Resolution, including acquiring a Hold Harmless and Indemnification Agreement from the outside employer and adhering to the wage scale set by the Township. Officers working in off-duty non-security positions are not subject to the Resolution and are free to set their own wage scale. Thus, it is clear that the Resolution applies only to police officers engaged in "off-duty" security work and classifies off-duty officers into two groups: officers performing off-duty security work and those performing off-duty non-security work.[12]

■ In determining the validity of this classification scheme, the court must first decide the proper standard of review. Generally, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). A higher standard of review applies only when the statute classifies by race, alienage, or national origin, or when the statute implicates a fundamental right. *Id.* The Resolution's classification of officers based on the type of off-duty work performed does not implicate any of the factors which require heightened scrutiny under equal protection. Accordingly, this court will apply the rational relationship test to the FOP members' equal protection challenge to the Resolution. In making this determination, the court is aware that "when social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude." *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254. In addition, the party challenging

the Resolution bears the "heavy burden" of demonstrating that "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)).

### A. Legitimate Interests

■ While it may be true that economic factors have forced police officers into the practice of moonlighting, a township has a legitimate interest in regulating its police department, including the off-duty activities of its officers. It is clear that such goals as reducing mental and physical fatigue, limiting litigation and lessening liability insurance expenses serve as legitimate government interests supporting regulation. *See, e.g., Ammon v. City of Coatesville,* No. 87–1577 (E.D.Pa. July 24, 1987) (1987 Lexis 6719, 1987 WL 15032), *aff'd,* 838 F.2d 1205 (3d Cir.1988). Because of these legitimate goals, it is also clear that a municipality can regulate and even prohibit off-duty work. *See Isola v. Borough of Belmar,* 34 N.J.Super. 544, 112 A.2d 738 (App.Div.1955); *see also Rhodes v. Smith,* 273 S.C. 13, 254 S.E.2d 49, 50 (1979) ("Regulations prohibiting *all* outside employment have been upheld."); Annotation, *Validity, Construction, and Application of Regulation Regarding Outside Employment of Governmental Employees or Officers,* 94 A.L.R.3d 1230 (1979). Finally, the court recognizes that a "majority of courts considering the validity of regulations which in some way restrict the outside employment of government employees have upheld the regulations."

---

**12.** Defendants contend in their brief that the Resolution does not create any classifications because each officer is treated the same no matter where he or she moonlights. However, in their answer, defendants admit that "police officers employed in 'moonlighting' other than security work are not subject to the provisions of the Resolution." *See* Answer, ¶ 13. In addi-

tion, the Resolution clearly provides that "no Pennsauken police officer shall act in an *off-duty security capacity,* commonly known as 'Moonlighting' unless the prospective employer has executed the attached Agreement and performed pursuant to the provisions thereof." The Resolution does not apply to officers in non-security positions.

*Ammon v. City of Coatesville*, No. 87–1577 (E.D.Pa.1987).

■■■ This court must now consider the validity of the Resolution with its accompanying Hold Harmless and Indemnification Agreement insofar as it applies only to officers engaged in off-duty security work. The Township offers one justification for the Resolution: to prevent the Township from litigation and liability exposure in the event an off-duty officer is deemed an employee of the Township. This justification fails to withstand even the minimum scrutiny under the rational relationship test.

### B. *Asserted Interest*

Defendants contend that the Resolution serves a legitimate state interest in protecting taxpayers against litigation and liability exposure in the event that an off-duty moonlighting officer is deemed to be an employee of the Township in a wrongful tortious action.[13] In support, the Township outlines a series of incidents that occurred while off-duty officers were employed in security positions and argues that such incidents presented the Township with potential liability exposure.

While it is true that a municipality's attempt to limit its exposure to liability and to protect the public treasury when an off-duty officer commits a tort outside the scope of police employment is a legitimate government end, *see Fort Wayne*, 625 F.Supp. at 731,[14] the Township's Resolution is not so limited. The Resolution through the indemnification agreement also at-tempts to shift the burden of liability on an outside employer regardless of whether the officer committed the alleged tort in his role as a municipal officer or in his role as a security guard for a private employer.[15] Specifically, section 4 of the Hold Harmless and Indemnification Agreement provides that the employer's insurance company shall pay all Township costs of litigation whether the off-duty officer "is determined to be either an employee of the employer or an employee of the Township." In addition, section 5 of the agreement requires that the employer agree to hold the Township harmless and indemnify the Township for

> any acts committed by the 'moonlighting' off-duty Pennsauken police officer in the course of his activities as a 'moonlighting' Pennsauken police officer, *whether or not it is judicially determined or agreed between any parties that the 'moonlighting' Pennsauken police officer was an employee of the Township or an employee of the employer in this Agreement.* (Emphasis added.)

The court finds that shifting the *entire* burden of litigation and liability onto third-party employers is not a legitimate government interest. *See Benelli v. City of New Orleans*, 478 So.2d 1370, 1373 (La.Ct.App. 1985) ("it is not a proper governmental end for the City to shift the entire legal responsibility for its police officers onto paid detail employers who might coincidentally benefit from duties which benefit the public at large and which a police officer is

---

**13.** The Resolution provides that the Township is "desirous of protecting the taxpayers of Pennsauken Township from litigation and liability exposure in the event the off-duty police officer [is] deemed to be an employee of the Township of Pennsauken, in the event of a wrongful or tortious act." Resolution at ¶ 3.

**14.** In *Fort Wayne*, the court examined a proposed police policy that, among other requirements, required that all employers of police for outside work "provide proof that the officer will be protected by that employer's insurance and the employer will hold the City harmless for liability incurred because of the officers' outside employment, or else name the City as a named insured in their liability policies." *Id.* at 724. The court found that the purpose of the policy

of protecting the City from loss of insurance coverage was related "directly to the administration of the City's law enforcement responsibilities" and therefore was legitimate. *Id.* at 731.

**15.** The Township shifts arguments in its brief. At first, the Township argues the legitimate interest of limiting liability for torts outside the officers' official duty. However, the Township also argues that the legitimate purpose of the Resolution is to protect the Township against liability in the event the officer is *deemed* an employee of the Township. Because the Resolution and Hold Harmless Agreement do not make a distinction between torts committed outside or within the scope of official duties, it is clear to this court that the Township is attempting to shift liability exposure in all cases.

legally obligated to perform twenty-four hours a day."). Under New Jersey law, a municipality must provide an officer with the necessary means for defense "[w]henever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties," N.J.Stat.Ann. 40A:14–155 (West Supp.1988).[16] Thus, the Township has a statutory obligation to provide an officer with necessary means for defense in an action which arises out of the officer's performance of his duties. *See, e.g., Township of Edison v. Mezzacca*, 147 N.J.Super. 9, 370 A.2d 511 (App.Div.1977); *see also Critchley & Roche v. City of Newark*, 206 N.J.Super. 32, 39, 501 A.2d 1002, 1006 (App.Div.1985) (municipality's statutory requirement is to offer "its police officers the services of reasonably competent attorneys who are admitted to practice law in this State"). Although the scope of this statutory obligation has been limited by the legislature, it is clear that the statute applies when a police officer is exercising official duties. A municipality would be responsible for the legal fees of an off-duty officer who responded to an incident in his official capacity and then is sued for actions arising out of that response.

In addition, under the New Jersey Tort Claims Act, public entities are liable for the torts of their employees committed within the scope of public employment under the theory of *respondeat superior* except when the municipal employee's actions are intentional. *See* N.J.Stat.Ann. 59:2–2,–10 (West 1982); *see also McDonough v. Jorda*, 214 N.J.Super. 338, 350, 519 A.2d 874, 880 (App.Div.1986) *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). Specifically, the state Tort Claims Act provides in pertinent part:

59:2–2. Liability of public entity

a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

The court also notes that a municipality is only liable for the torts of its employees for a judgment to the extent the amount is directly attributable to the negligence of the public employee. *See* N.J.Stat.Ann. § 59:9–3; 59:9–3.1 (West Supp.1988).[17] Thus, it appears unreasonable to this court to shift onto a third party liability imposed by a state statute on a municipality.

This court also deems it unreasonable to force onto a third-party employer the entire cost of workers' compensation and insurance when police actions by the off-duty officers benefit the public. Shared liability based on the extent to which the officer is

---

**16.** The court notes that this obligation hinges on whether the proceeding arose out of the officer's official duties. In fact, the state legislature recently amended the statute to clarify the municipality's obligation and to "eliminate the coverage of this section for charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and for status charges. *See* Senate Co. § Mun.Govn.Comm.Statement, S. No. 1684–L.1985 C. 457 (West.Supp.1988).

**17.** The relevant sections provide:

59:9–3. **Contribution by a public entity or public employee with a joint tortfeasor**
Contribution by a public entity or public employee with a joint tortfeasor. Notwithstanding any other law, in any case where a public entity or public employee acting within the scope of his employment is determined to be a joint tortfeasor, the public entity or public employee shall be required to contribute to a joint tortfeasor only to the extent of the recovery provided for under this act.

59:9–3.1 **Public entity or employee as tortfeasor; liability for damages**
Notwithstanding the provisions of P.L.1952, c. 335 (C.2A:53A–1 *et seq.*), P.L.1973, c. 146 (C.2A:15–5.1 *et seq.*) or any other law to the contrary, in any case where a public entity or public employee acting within the scope of his employment is determined to be a tortfeasor in any cause of action along with one or more other tortfeasors, the public entity or public employee shall be liable for *no more than that* percentage share of the damages which is equal to the percentage of the negligence attributable to that public entity or public employee and only to the extent authorized by N.J.S. 59:9–2 and N.J.S. 59:9–4.

deemed to be a municipal employee and on the extent to which the officer is deemed to be acting outside the scope of official duties would be reasonable; however, shifting the entire liability onto third-party employers for actions that officers must take is unreasonable. As the *Benelli* court explained in analyzing a challenge to a similar resolution:

> The reasonableness of the regulation in shielding the City from liability for police department members on paid details (defined as officers employed by third parties) where they are hired to perform police duties, must take into consideration the fact that off-duty officers are required to take "police action" in response to "any serious police matter coming to their attention at any time." ... The public is benefited where an off-duty member of the police force responds to a "serious police matter" regardless of whether the officer's actions also benefit a paid detail employer. Hence, we find solidary liability reasonable and just....

> We hold that it is not a legitimate end ... and hence unreasonable, to attempt to completely shift either tort or workers' compensation responsibility for police officers, who are required to act at all times to benefit the public, to individuals or groups who hire the officers on paid details. Furthermore, we believe the attempt to so burden paid detail employers chills the police officers' constitutional rights to liberty and property.

478 So.2d at 1373–74. Similarly, in this case, the attempt to shift the entire cost of litigation is not a legitimate purpose and cannot support the Resolution. Accordingly, the Township has failed to proffer a legitimate interest to support the Resolution. The court makes this determination because the language of the Hold Harmless and Indemnification Agreement embraces all actions by off-duty police officers regardless of whether the officer was responding in his official police capacity.

### C. *Rationality of the Classification*

■ Assuming, however, that the Township's Resolution clearly limited the shift of insurance and liability costs to third-party employers only when officers are injured or sued as a result of actions *outside* the scope of their police duties, the court would still need to analyze the rationality of the classification created by the Resolution. *Compare Fort Wayne*, 625 F.Supp. at 724 (policy did not attempt to shift entire burden of litigation and insurance onto outside employer but was limited to "liability incurred because of the officers' outside employment"). The issue clearly would be whether the Township could require the Hold Harmless and Indemnification Agreement solely of officers engaged in off-duty security work. The Township's Resolution fails under this prong of the test as well, because it is underinclusive.

The court finds that the resolution suffers from the same impediment that existed in *Isola v. Borough of Belmar*, 34 N.J. Super. 544, 112 A.2d 738 (App.Div.1955). In *Isola*, the New Jersey Superior Court reviewed an ordinance that prohibited members of the police department from engaging in any outside employment unless granted permission to do so by the Board of Commissioners. While the court found that the prohibitory clause standing alone was valid, *id.* at 553, 112 A.2d 738, the exception clause created the "possibility of discrimination between members of the same police force inasmuch as the ordinance fail[ed] to fix any standard whatsoever to guide the commissioners in their determination of applications for exemptions." *Id.* at 554, 112 A.2d at 744. Equally important, the court found that "the very exception would run counter to, if not destroy the reasons underlying the prohibition against off-hours employment." *Id.*

The reasoning of the court in *Isola* is applicable in this case. The Township, by attempting to regulate the outside employment of the police officers, has created exceptions that run counter to and destroy the underlying rationale for the Resolution. The justification offered by the Township as a legitimate state interest is eroded, due to the exception that officers engaged in non-security work are not subject to the

Resolution. In New Jersey, a police officer has an "inherent duty to obey the law and to enforce it," *State v. Stevens*, 203 N.J.Super. 59, 65, 495 A.2d 910, 913 (Law.Div. 1984), and to "use all reasonable means to enforce the laws applicable in his jurisdiction, and to apprehend violators." *State v. Cohen*, 32 N.J. 1, 9, 158 A.2d 497, 501 (1960). A police officer "is not invested with discretion to decide whether the law should be enforced; he is obligated to take such lawful action as in his discretion and in the exercise of good faith and reasonable diligence is necessary to bring criminals to justice." *State v. Secula*, 153 N.J.Super. 539, 544, 380 A.2d 713, 715 (App.Div.1977). In addition, a municipal police officer "shall have full power of arrest for any crime committed in said officer's presence and committed anywhere within the territorial limits of the State of New Jersey." N.J. Stat.Ann. 40A:14–152.1. (West 1980).

Because of these statutory duties, it is conceivable that an off-duty officer employed as a cabdriver would face more public exposure than an officer moonlighting as a security guard in a closed department store or school. In fact, the geographical range and exposure of a cab driver is much greater than the motorized patrol officer confined to the township limits. A police officer working as a cabdriver who witnesses an assault or theft and responds to it could present a greater insurance risk to the Township than an off-duty security officer. This illustration is only one example, but it clearly demonstrates the problem of the Resolution's classification. Therefore, the Township's asserted interest in reducing insurance costs and liability crumbles under the actual application of the Resolution. *See Grusendorf v. City of Oklahoma City*, 816 F.2d 539, 543 (10th Cir. 1987) (noting that a peculiar aspect of limit-ing only to firefighter trainees a police regulation prohibiting smoking of cigarettes when off duty did not appear "entirely rational" under equal protection analysis since the "rest of the firefighters, for whom good health and physical conditioning are no doubt also important," were free to smoke as desired). The Resolution does not support the distinction between officers based on the type of off-duty work. This court recognizes that the Township in this case is precluded from banning all moonlighting activities because of the collective bargaining agreement; however, the classification adopted by the Township is clearly arbitrary and as such is unconstitutional on its face.[18] *See Isola*, 34 N.J.Super. at 545, 112 A.2d at 738.

## VI. NEW JERSEY PRIVATE DETECTIVE ACT

In their briefs, defendants argue that the Resolution does not violate the collective bargaining agreement between the Township and plaintiffs. In addition, defendants argue that if the Resolution contravened the agreement, any contractual obligations were superceded by the state Private Detective Act of 1939, N.J.Stat.Ann. 45:19–8 (West 1978). The court will not address the issue of whether the Resolution violates the collective bargaining agreement. However, it is unclear whether the Township is asserting that the Private Detective Act serves as a justification for the Resolution. In fact, defendants assert that the Resolution was enacted in part to comply with an opinion of the New Jersey Attorney General concerning the relationship between police officers and private parties with respect to the Private Detective Act of 1939.[19] Thus, in order to give full consideration to the Township's arguments, the court must determine whether the Act

---

18. The court notes that the Township has outlined several examples of officers engaged in off-duty security work who have been subject to litigation and that said litigation has caused the Township liability or potential liability. However, there is no documentary evidence which details any relationship between the moonlighting activity and the Township's ability to obtain liability insurance or the Township's potential for financial disaster.

19. The Resolution provides that "the Township Committee of the Township of Pennsauken has become aware of the opinion of the Attorney General which states that the Township is required to directly participate in the process of hiring off-duty policemen in the capacity of off-duty security guards, commonly known as police 'Moonlighting'." Resolution at ¶ 2.

could serve as a legitimate interest to support the Resolution under constitutional analysis. Because the Township's argument is based on an inaccurate reading of the law, the court concludes that the Act is inapposite to the constitutional analysis of the Resolution and does not serve as a legitimate interest.

■ Defendants contend that under Attorney General Opinion 1977–No. 23, an unlicensed police officer engaging in off-duty police-related activities without the municipality brokering the employment would violate state law. Plaintiffs respond that the thrust of the opinion is not that the Township must broker off-duty employment, but that if such arrangements are made, police officers are not required to comply with the licensing requirement of the Private Detective Act. In addition, plaintiffs argue that an Attorney General Opinion cannot constitute a legitimate state interest.

The Private Detective Act provides that anyone engaging in the private detective business must obtain a license from the Superintendent of State Police to conduct such business. N.J.Stat.Ann. 45:19–10. Under the Act, "private detective business" is defined to include the "business of conducting a private detective agency.... [and] the *furnishing* for hire or reward of watchmen or guards or private patrolmen or other persons to protect persons or property, either real or personal, or for any other purpose whatsoever." N.J.Stat.Ann. 45:19–9(a) Excluded from this definition is "any county, municipality, school district, or any officer or employee solely, exclu-

sively and regularly employed by any of the foregoing." N.J.Stat.Ann. 45:19–9(a).

The court rejects defendants' contention that the Private Detective Act mandates that activities related to off-duty police be channeled through the municipality. It is clear that a municipality furnishing police officers to third-party employees for off-duty hours would not fall under the Act; however, the Township's conclusion that the Act mandates such arrangements is incorrect.[20] It is an "uncontroverted fact that private corporations or industry may hire police as employees to perform security work." *In re Rawls*, 197 N.J.Super. 78, 86, 484 A.2d 53, 57 (Law Div.1984) (citing Atty.Gen.F.O.1978, No. 11.). In fact, the Attorney General in a later opinion attempted to clarify the ambiguity of its 1977 opinion by stating that arrangements between third parties and municipalities are not mandated but are merely an "option." Atty.Gen.F.O.1978, No. 11. In addition, the Township is erroneous in asserting that without the municipality's involvement, an unlicensed police officer engaging in off-duty police-related activities would violate the Act. Analysis of the statute reveals that police officers engaged in off-duty security work do not fall under the licensing requirements of the Act unless they are engaged in the "private detective business." *In re Rawls*, 197 N.J.Super. at 88, 484 A.2d at 57 (citing Atty.Gen.F.O.1978, No. 11).[21] Under New Jersey law, it is clear

that where arrangements are made with off duty municipal police or any other persons to perform police-related activi-

---

**20.** In fact, the Attorney General recognized that officers "licensed under the Act would of course be in a different category" than unlicensed officers. Atty.Gen.F.O.1977, No. 11, n. 1

**21.** The *Rawls* court stated that "[r]egular members of a municipal police department during their off duty hours or any other person who is licensed under the Private Detective Act may engage in police-related activities for private commercial establishments as employees without being in violation of the Private Detective Act, so long as those activities do not constitute the business of a private detective security guard or watchman." *Id.* at 88, 484 A.2d at 58 (citing Atty.Gen.F.O.1978, No. 11).

The definition of the "private detective business" under the Act does not include an off-duty officer solely working as a security guard but rather is defined as "the business of conducting a private detective agency ... [and] the *furnishing* for hire or reward of watchmen or guards or private patrolmen...." N.J.Stat.Ann. 45:19–9(a); *see also In re Rawls*, 197 N.J.Super. at 86, 484 A.2d at 57 ("A person who merely works for a licensed private detective agency is not himself engaged in the private detective business, even though, in acting on behalf of the agency, he performs those activities enumerated above which subject the agency to licensure.").

ties for private commercial establishments as their employees on either a full or part time basis, those activities would not fall within the intendment of the Act. Rather, the statute would be directed only to those instances where municipal policemen or other persons act as an independent contractor and advertise, hold themselves out, actively pursue and solicit a variety of police related opportunities on a regular basis for hire or profit.

Atty.Gen.F.O.1978, No. 11 (footnote omitted). The Township's assertion that the brokering requirement is mandated by the Act and that without the municipality's required involvement, an unlicensed police officer would violate the Act is erroneous. As such, this asserted purpose of the legislation is not a legitimate interest and does not support adoption of the Resolution and its accompanying Hold Harmless and Indemnification Agreement.[22]

## VII. DUE PROCESS

FOP also asserts that the Resolution violates the due process rights of the members by interfering with the liberty interest guaranteed under the fourteenth amendment.[23] Specifically, plaintiffs contend that the Resolution unreasonably interferes with a recognized liberty interest in the pursuit of a "common occupation" in the community. Defendants argue that plaintiffs have failed to demonstrate that the Resolution infringes upon any due process right. In addition, defendants argue that even if the officers' rights were implicated by the Resolution, the municipality has legitimate interests to support the action.

### A. *Liberty Interest*

In a litany of cases, the Supreme Court has stated that the "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes with the 'liberty' and 'property' concepts of the Fifth Amendment." *See, e.g., Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) (citing cases). A liberty interest in an employment context is abridged when the defendant has imposed a "stigma or other disability" that forecloses the plaintiff's "freedom to take advantage of other employment opportunities." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *see also Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984). This liberty interest "may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." *Meyer v. Nebraska,* 262 U.S. 390, 399–400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923).

■ It is clear that the Resolution implicates the FOP members' liberty interest in pursuing other employment opportunities by prohibiting officers from working in security positions without complying with the Resolution and executing the Hold Harmless and Indemnification Agreement. A municipality "cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the fourteenth amendment." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). This court finds that the Resolution and the Hold Harmless and Indemnification Agreement impose a significant disability on the officers' ability to pursue off-duty employment. *See Fort Wayne,* 625 F.Supp. at 732 (court recognized that police policy restricting off-duty employment might implicate officers' liberty interests). The Township's resolution calls for more than the mere approval of work permits by the police chief. The officers must present to employers an intimi-

---

**22.** In fact, the Township admits that it adopts the brokering aspect of Resolution "reluctantly," and only in compliance with the opinion of the Attorney General. Brief for Defendants In Opposition of Application To Permanently Enjoin Defendant at 3.

**23.** Plaintiffs also assert that the Resolution violates their due process rights afforded under the fifth amendment to the Constitution. As plaintiffs have not alleged any action by the federal government, this fifth amendment challenge will not be considered. *See supra* n. 11.

dating agreement requiring the employer to hold the municipality harmless in any action involving the off-duty officer "whether or not it is judicially determined or agreed between any parties that the 'moonlighting' Pennsauken police officer was an employee of the Township or an employee of the employer in this Agreement." Hold Harmless and Indemnification Agreement at § 5. The agreement also requires the employer to be responsible for "any settlement or verdict monies which accrue as a result of any actions of any 'moonlighting' Pennsauken police officer and indemnification for any legal fees, or any other costs which accrue as a result of actions of a Pennsauken police officer in a 'moonlighting' capacity conducting activities for the employer." *Id.* In addition, pursuant to the agreement, the Township sets the pay scale for the security jobs and adds to this scale an administrative cost. In effect, the Township acts as the officer's broker, *i.e.*, the employer pays the Township which in turn pays the officer. Accordingly, the officer is prevented from negotiating the wages for the off-duty security work. Considering all these factors, it is clear that the agreement imposes a significant disability on the officers' ability to secure future employment in security positions.[24]

### B. *Asserted Interest*

■ The court must next resolve whether the resolution unconstitutionally infringes upon the officers' liberty interest in pursuing a common occupation. The resolution of this question begins with the determination of the appropriate standard of review. Municipal resolutions that do not impinge upon a fundamental right or suspect class are reviewed under the rational relationship test. *See Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. 254, 257–58 (E.D.Pa.1984), *aff'd*, 779 F.2d 43 (3d Cir.1985). In fact, the Supreme Court has held that municipal regulations governing police employment are entitled to a presumption of validity. *Kelley v. Johnson*, 425 U.S. 238, 247, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (1976) (question is whether challenger "can demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property"). This rational relationship test has been followed by numerous courts analyzing challenges of a broad array of police regulations. *See, e.g., Grusendorf v. City of Oklahoma City*, 816 F.2d 539, 543 (10th Cir.1987) (challenge by firefighter trainee of nonsmoking regulation prohibiting smoking on and off duty for one year); *Voorhees v. Shull*, 686 F.Supp. 389, 394 (E.D.N.Y.1987) (challenge by former police officer of rule requiring officer on sick or injured leave to obtain permission before leaving residence). This court recognizes that strict scrutiny may apply when a public employee challenges limitations on rights specifically protected by the Constitution as opposed to those rights grounded in the general liberty language of the due process clause. *See Pienta v. Village of Schaumburg*, 710 F.2d 1258, 1260 (7th Cir.1983); *see also Voorhees*, 686 F.Supp. at 393–94. Because the officers' claims are grounded in the general liberty language of the due process clause, the court will apply the rational relationship standard to the Township's resolution.

Under the rational relationship test, the court must determine whether the adopted resolution is "so irrational that it may be branded 'arbitrary,' and therefore a deprivation of [plaintiffs'] 'liberty interest.'" *Kelley v. Johnson*, 425 U.S. at 248, 96 S.Ct. at 1446 (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955)). In addition, the party challenging the regulation carries a "heavy burden" in demonstrating that the resolution is arbitrary and irrational. *Hodel v. Indiana*, 452 U.S. 314, 332, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1980).

---

**24.** These facts distinguish this case from *Fort Wayne* where the court held that there had been "no evidence to suggest that police officers will not be able to find off duty employment once the revised form of Policy III goes into effect, especially in light of the fact that Policy III requires approval only for security and investigative employment." 625 F.Supp. at 732.

As previously stated, defendants assert the following justification for the resolution: to protect "the taxpayers of Pennsauken Township from litigation and liability exposure in the event the off-duty police officer [is] deemed to be an employee of the Township of Pennsauken, in the event of a wrongful or tortious act." Resolution at ¶ 3. The analysis applied under the equal protection section of this opinion applies equally as well to the officers' liberty interest. To reiterate, the court recognizes and adopts the principal that a municipality has legitimate interests in regulating the activities of its police officers, including off-duty conduct. In addition, these legitimate interests may even support a municipality's ban of moonlighting activities. In this case, however, the Township fails to offer any legitimate state interests.

As previously stated, this court finds that the liability and litigation considerations are legitimate governmental interests in so far as they relate to actions by police officers *not* performing official duties. It is not a legitimate interest, however, to attempt to shift liability and litigation exposure in all cases, even those where it is judicially determined that the officer was acting in an official capacity. As the *Benelli* court, in analyzing a similar indemnification agreement, stated:

> where an off-duty officer commits a tort in connection with outside employment while not responding to a police matter, the form has no effect because the City is not liable for the torts of its employees which are unrelated to their duties for the City. Even in the absence of an express assumption of liability, the outside employer, and not the City, would be potentially liable for any damages, costs and attorney's fees. Again, the form does nothing except make it more difficult for an off-duty police officer to get outside employment, and we again hold that it is unreasonable to require outsid-

er employers sign an intimidating form with no legal effect.

478 So.2d at 1373.

Similarly, in this case, the Resolution, by its attempt to shift the *entire* burden of litigation and liability onto the third-party employees, unreasonably interfers with the police officer's liberty interest in pursuing a common occupation. As earlier stated, a police officer in New Jersey has a statutory duty to enforce the law regardless of whether the officer is off the municipal time clock. In addition, the intimidating and severe requirements of the agreement do not have any legal effect because the municipality has a statutory duty to defend its officers for torts committed within the scope of official duties and because a municipality is liable for the actions of its officers under the state Tort Claim Act. Thus, the Resolution and Hold Harmless and Indemnification Agreement impinge upon plaintiffs' constitutionally protected liberty rights.[25] Accordingly, the court concludes that the Resolution on its face violates the due process clause of the fourteenth amendment.

## VIII. NEW JERSEY CONSTITUTION

Plaintiffs also argue that the Resolution violates the provisions in the New Jersey Constitution. Neither party has briefed this issue nor will the court address the issue at this time. It is clear, however, that the reasoning of *Isola v. Borough of Belmar*, 34 N.J.Super. 544, 112 A.2d 738 (App.Div.1955), holding an ordinance prohibiting police officers from off-duty work arbitrary because of an exception clause, would apply to an analysis by this court of the Resolution under the New Jersey Constitution.

## IX. PRELIMINARY INJUNCTION

■ In order to support a motion for preliminary injunction, plaintiffs must dem-

---

**25.** In addition, as plaintiffs point out, the Township, through the brokering of off-duty officers, may even increase liability exposure because of the greater risk that any action taken by an off-duty officer would be deemed official action. The Resolution and its accompanying requirements, including the establishment of a wage scale, are indicia that the off-duty officer is a municipal employee. Thus, even if the Resolution were legitimately limited to shifting liability in only those cases where the officer was deemed not to be an employee of the Township, it is questionable whether the Resolution would be rationally connected to this interest.

onstrate that (1) there is a reasonable probability of success on the merits; (2) that movants will suffer irreparable harm if the relief is not granted; (3) that plaintiffs will suffer more harm than defendants if the relief is not granted; and (4) that the granting of an injunction will be in the public interest. *Ecri v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987).

It is clear that plaintiffs have established that there is a reasonable probability of success on the merits because the court has held that the resolution violates both the equal protection and due process rights of the officers. That success is extensively demonstrated in the earlier portions of this opinion.

With respect to the second factor of irreparable harm, an injunction will not be granted unless the moving party demonstrates irreparable injury that cannot be adequately compensated by damages. 809 F.2d at 226. A plaintiff must establish more than a risk of irreparable harm. *Id.* It is plaintiff's "burden of proving a 'clear showing of immediate irreparable injury.' " *Id.* (quoting *Continental Group Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir.1980)). In this case, plaintiffs have demonstrated that irreparable harm exists. In fact, "injunctive relief is a particularly appropriate remedy when the harm is prospective enforcement of an unconstitutional statute." *E & E Const. Co. v. Illinois,* 674 F.Supp. 269, 277 (N.D.Ill.1987). In this case, the court has determined that the Resolution violates the officers' equal protection rights. In addition, irreparable harm also exists because the Resolution and accompaning requirements of the Hold Harmless and Indemnification Agreement violate the officers' due process rights by unreasonably infringing upon the officers' liberty interest in pursuing a common occupation.

After balancing the harm to the parties, it is clear that the Township will not suffer any harm from the granting of a preliminary injunction. The Township has failed to demonstrate how the resolution would eliminate liability costs for actions by off-duty officers. In addition, because this court holds that the resolution is unconstitutional, it is "questionable whether the [Township] has any 'valid' interest in enforcing" the resolution. *Planned Parenthood Ass'n v. City of Cincinnati, Inc.,* 822 F.2d 1390, 1400 (6th Cir.1987).

Finally, the public interest factor weighs in favor of granting the injunction "since the public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional." *Id.* Thus, all four factors necessary to support the granting of a preliminary injunction have been met. The factors militate in favor of granting the injunction.

## X. CONCLUSION

In conclusion, the court finds that the Township's resolution violates both the police officers' equal protection and due process rights guaranteed by the fourteenth amendment. The court recognizes that a municipality may prohibit a police officer from engaging in moonlighting activities. In this case, the collective bargaining agreement precludes the Township from instituting such a ban. The Township, however, cannot circumvent the collective bargaining agreement by adopting a resolution that impermissibly infringes on the constitutional rights of the officers. This Resolution fails because it is not supported by legitimate interests, it is arbitrary in excluding off-duty officers in non-security positions and it unreasonably infringes upon the officers' liberty right to pursue a common occupation.

An appropriate order will be entered.

## APPENDIX

### DOCKET NO. 86–310

RESOLUTION ADOPTING A NEW POLICY AS TO POLICE MOONLIGHTING AND INSTRUCTING THE DIRECTOR OF PUBLIC SAFETY AND CHIEF OF POLICE OF THE TOWNSHIP OF PENNSAUKEN TO ACT IN ACCORDANCE THEREOF.

BE IT RESOLVED, by the Township of Pennsauken, in the County of Camden, State of New Jersey as follows:

WHEREAS, the Township Committee of the Township of Pennsauken has become aware of the opinion of the Attorney General which states that the township is required to directly participate in the process of hiring off-duty policemen in the capacity of off-duty security guards, commonly known as police "Moonlighting," and

WHEREAS, the Township Committee of the Township of Pennsauken is desirous of protecting the taxpayers of Pennsauken Township from litigation, and liability exposure in the event the off-duty police officer deemed to be an employee of the Township of Pennsauken, in the event of a wrongful or tortious act;

NOW, THEREFORE, BE IT RESOLVED by the Township Committee of the Township of Pennsauken, County of Camden and State of New Jersey, that the Director of Public Safety and the Chief of Police of the Township of Pennsauken, are hereby instructed to proceed in accordance with the attached Hold Harmless and Indemnification Agreement, which requires all prospective employers of Pennsauken police officers in an off-duty security capacity to execute this attached Agreement prior to the issuance of any work permits for "Moonlighting,"; and

BE IT FURTHER RESOLVED, that no Pennsauken police officer shall act in an off-duty security capacity, commonly known as "Moonlighting" unless the prospective employer has executed the attached Agreement and performed pursuant to the provisions thereof.

This Resolution shall take effect immediately.

TOWNSHIP OF PENNSAUKEN

WILLIAM ORTH, MAYOR

HOLD HARMLESS, INDEMNIFICATION AND "MOONLIGHTING" AGREEMENT BY AND BETWEEN _____ AND THE TOWNSHIP OF PENNSAUKEN

This Agreement made this day of , 1986 by and between the Township of Pennsauken (hereinafter called "the Township"), and of the township of County of and State of (hereinafter called "the Employer"), the parties agree as follows:

1. The employer is desirous of employing off-duty Pennsauken police officers in the capacity of security guards and personnel.

2. The parties acknowledge that said police officers are permitted to do so pursuant to statutory and contractual provisions of the existing contract between the F.O.P. Garden State Lodge 3 and the Township of Pennsauken, and the parties agree that the employer will abide by the provisions of the statutory and contractual provisions subject to the authority of the Chief of Police and the Director of Public Safety of the Township of Pennsauken.

3. The parties agree that the employer will contact the office of the Chief of Police directly with regard to the present and future hiring of any police officer for off-duty security employment, commonly known as "moonlighting." The payment of same will be under the following terms and conditions:

a) The employer will pay to the Township of Pennsauken an hourly rate for the services of said off-duty Pennsauken police officers the sum of $ representing the wage of the aforesaid off-duty Pennsauken police officer plus administrative costs of the Township of Pennsauken, said payment will be paid to the Township upon billing by the Township of Pennsauken and the employer agrees to pay same within a maximum of thirty (30) days of presentation of the billing by the Township.

4. In consideration of employing the aforesaid off-duty police officers in security positions for job services commonly known as police "moonlighting," the employer agrees as follows:

a) Said employer shall co-insure all aforementioned moonlighting Pennsauken police officers on its current workers' compensation insurance policy and shall co-insure the Township of Pennsauken as additional insureds at no cost to the Township prior to any employment of the aforesaid

off-duty Pennsauken police officers in moonlighting positions. Said employer shall provide proof of said co-insurance in advance of any employment. In the event the employer obtains the services of said off-duty police officers on a periodic basis, the parties agree that the employer shall provide proof of said co-insurance, at the outset of each new interval of employment of off-duty Pennsauken police officers, co-insuring the Township on its current workers' compensation insurance policy naming all moonlighting Pennsauken police officers in its workers' compensation insurance coverage.

b) The employer further agrees to co-insure the Township of Pennsauken and its off-duty police personnel hired by the employer in "moonlighting positions," in a liability insurance policy in the minimum amounts of one million dollars ($1,000,000) aggregate for each moonlighting off-duty Pennsauken police officer. Said insurance policy shall contain provisions that in the event of any settlement or judicial determination that the aforesaid moonlighting off-duty Pennsauken police employee determined to be either an employee of the employer or an employee of the Township, said insurance company shall pay all the Township's costs of litigation including attorney's fees, costs and any settlement or monies required to be paid by the Township of Pennsauken shall be paid by the insurance company as indicated herein above.

c) The parties agree that failure to obtain any of these insurance policies shall cause a breach of this Agreement and that the Township shall have the immediate right to cancel all work permits for moonlighting on behalf of off-duty Pennsauken police officers.

5. As a further consideration for the Township permitting moonlighting employment on the part of off-duty Pennsauken police officers, the employer further agrees to hold the Township harmless and indemnify the aforesaid Township for any acts committed by the "moonlighting" off-duty Pennsauken police officer in the course of his activities as a "moonlighting" Pennsauken police officer, whether or not it is judicially determined or agreed between any parties that the "moonlighting" Pennsauken police officer was an employee of the Township or an employee of the employer in this Agreement. Said hold harmless and indemnification shall include any settlement or verdict monies which accrue as a result of any actions of any "moonlighting" Pennsauken police officer and indemnification for any legal fees, or any other costs which accrue as a result of the actions of a Pennsauken police officer in a "moonlighting" capacity conducting activities for the employer.

6. The parties further agree that any failure to provide proof of any insurance at any time at the request of the Township or the payment of any bills which are owed by the employer to the Township shall cause this Agreement to be immediately terminated and any "moonlighting" Pennsauken police officer's work permit to be cancelled immediately on order of the Chief of Police or the Director of Public Safety.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this day of , 1986.

TOWNSHIP OF PENNSAUKEN

By:_____

Twp. Clerk

_____

Employer

Attest:_____

Witness:_____

### ORDER

For the reasons set forth in this court's opinion filed even date;

IT IS on this 28th day of March, 1989 hereby ORDERED that plaintiff's request for a preliminary injunction enjoining defendants from implementing Resolution 86–310 is GRANTED.